Eric **SYLTE** and Maureen Lu Saari, on their behalf and on behalf of all others similarly situated,

v.

The **METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY**, a Municipal Corporation; Joseph Casey, Chief of Police for the Metropolitan Government of Nashville and Davidson County; J. Franklin Stone, Director Solicitations Board, The Metropolitan Government of Nashville and Davidson County, Individually, and in their official capacities.

No. 79–3627.

United States District Court,
M. D. Tennessee,
Nashville Division.

Feb. 29, 1980.

---

314

Edward T. Stein, Chicago, Ill., Lionel R. Barrett, Jr., Nashville, Tenn., Jere Hood, Winchester, Tenn., for plaintiffs.

Sarah E. Sedgwick, George A. Dean, Nashville, Tenn., for defendants.

## MEMORANDUM

MORTON, Chief Judge.

This matter coming on to be heard at trial upon the plaintiffs' application for injunctive and declaratory relief, based upon the First and Fourteenth Amendments to the United States Constitution, 28 U.S.C. §§ 1331, 1343, 1651 and 2202 and 42 U.S.C. §§ 1983 and 1988, and the court having heard testimony, received evidence, heard the arguments of counsel, and reviewed the briefs of counsel and upon the stipulation of certain matters, being fully advised in the premises, the court now enters, pursuant to Rules 52(a) and 65(d) of the Federal Rules of Civil Procedure, its Findings of Fact and Conclusions of Law:

Plaintiffs Eric Sylte and Maureen Lu Saari are adult individual members of the Holy Spirit Association for the Unification of World Christianity ("Church"). The plaintiffs have been members of the Church for three years and five years respectively. The plaintiffs perform religious and missionary work for the Church in public places, including the public streets, sidewalks and parks of the City of Nashville, and wish to continue doing so. Plaintiffs are citizens and residents of the United States, State of Tennessee, and the City of Nashville.

The Holy Spirit Association for the Unification of World Christianity, of which plaintiffs are members, is a duly constituted religious organization or church authorized as a non-profit corporation under the laws of the State of Tennessee.

The defendant Metropolitan Government of Nashville and Davidson County (METRO) is a duly constituted municipal corporation and is the employer of the individual defendants. The defendant municipality is liable for the constitutional deprivations visited pursuant to governmental custom and is sued by the plaintiffs for maintaining and encouraging a policy and practice wrongfully denying plaintiffs and others similarly situated their constitutional rights of freedom of religion and speech.

The defendant Joseph Casey was at all times material to this complaint the Chief of Police of the Metropolitan Government of Nashville and Davidson County and as such is responsible for the supervision and direction of police activities. He is sued in both his individual and official capacities.

The defendant Peter Curry is the duly authorized Director of the Legal Department of the Metropolitan Government of Nashville and Davidson County and as such is charged with the enforcement of and prosecutions under ordinances of Metro in a manner consistent with the United States Constitution. At all times material to this complaint he was acting in both his individual and official capacities and is so sued.

The defendant J. Franklin Stone is the Director and a member of the Solicitations Board of the Metropolitan Government of Nashville and Davidson County, and as such is charged with administering and enforcing the provisions of Ordinance 78–1022 herein challenged as unconstitutional. At all times material to this complaint he was acting in both his individual and official capacities and is so sued.

At all times material hereto, there was in effect an ordinance, Bill No. 78–1022, entitled "An Ordinance Repealing Substitute Ordinance No. 75–1250 as Amended and Establishing in Lieu Thereof an Ordinance Regulating Solicitations for Charitable, Benevolent, Patriotic, Philanthropic, Welfare, Civic and Other Purposes; Requiring Registration of those Engaged in Solicitations for Religious purposes; Prohibiting Telephone Solicitation by Professional Solicitors, or Solicitations by False or Fraudulent Statements; and Providing Penalties for the Violation of the Ordinance."

On July 24, 1979, Sharon Levers and Charles Padilla, then members of the Holy Spirit Association for the Unification of World Christianity, were arrested by a member or members of the Metropolitan Police Department for the offense of "soliciting without having secured a religious registration certificate."

On or about July 25, 1979, said Sharon Levers and Charles Padilla appeared before a Metropolitan judge and pleaded no contest to the above offense and were convicted therefor. A Metropolitan attorney from defendant Peter Curry's office was present.

Plaintiffs seek to distribute literature, spread their word of God and solicit contributions while upon the sidewalks, streets, parks and other public places within the Metropolitan Government of Nashville and Davidson County to support their Church. The Church was founded in 1954, and is established in 120 cities throughout the United States. The Church emphasizes evangelical missionary activity and sponsors religious rallies, workshops, retreats, and lectures. Included in the activities of church members is door-to-door and public place proselytization and solicitation of funds for its support.

In order for plaintiffs or other members of any religious organization or church which seeks to solicit funds from the public within the area of the Metropolitan Government to solicit donations from the public, a religious registration certificate must first be applied for and obtained pursuant to Metropolitan Ordinance No. 78–1022, unless an exemption applies as set forth therein.

This court has jurisdiction over the parties hereto and over the subject matter hereof, pursuant to the First and Fourteenth Amendments to the United States Constitution, 28 U.S.C. §§ 1331, 1343, 1651, 2201 and 2202. The matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000.00.

This court finds that plaintiffs have alleged and proved a valid cause of action under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988.

Analysis of Ordinance 78–1022 reveals the following as to religious solicitations:

The administering board has the following specific powers:

(a) To approve or refuse permits and in the event of a refusal to file a written report explaining the reason for such refusal.

(b) To require applications to be filed in all cases required herein.

(c) To compel payment of fees prescribed for permits and to receive same.

(d) To do all things necessarily incident to securing of all permits, applications, certificates, registrations, and other forms required herein.

(e) To hold hearings as required herein.

(f) To revoke permits as stated herein.

(g) To publish reports and give any and all publicity to information received by it.

(h) To have access to and inspect books, records, papers, and facilities of applicants or of anyone making solicitation in the area of Metropolitan Government.

(i) To investigate the methods of making any solicitations, or to delegate this investigatory power to any person specifically approved by the Board to make such investigation.

(j) To issue requisite certificates.

(k) To determine in all cases where questions arise, if specific items in any applicant's fund-raising solicitation program should properly be designated as campaign costs and supplemental expenses, and the uniform accounting practices in accordance with the standards. Accounting and financial reporting for voluntary health and welfare organizations will be mandatory.

The application disclosure requirements mandated by the Ordinance are:

(a) The name, address, or headquarters of the person applying for the permit;

(b) If the applicant is not an individual, the names and addresses of the applicant's principal officers and managers, and a copy of the resolution, if any, authorizing such solicitation, certified as a true and correct copy of the original by the officer having charge of the applicant's records;

(c) The purpose for which such solicitation is to be made, the total amount of funds proposed to be raised thereby, and the use or disposition to be made of any receipts therefrom.

(d) A specific statement, supported by reasons and, if available, figures, showing the need for the contributions to be solicited;

(e) The names and addresses of the person or persons who have authority to disburse funds;

(f) The name and address of the person or persons who will be in direct charge of conducting the solicitation and the names of all professional solicitors connected or to be connected with the proposed solicitation;

(g) An outline of the method or methods to be used in conducting the solicitation;

(h) The time when such solicitation shall be made, giving the preferred dates for the beginning and ending of such solicitation;

(i) The estimated cost of the solicitation relative to said solicitation which shall include but not be limited to

  (1) printing

  (2) telephone

  (3) mail

  (4) rental fees

  (5) professional entertainment

  (6) any and all related expenses.

(j) The amount of any wages, fees, commissions, expense or emoluments to be expended or paid to any person in connection with such solicitation, and the names and addresses of all such persons;

(k) A financial statement shall be required from every applicant who has previously been issued a permit by the Board, setting forth the amounts and all funds collected for charitable purposes in the preceding fiscal or calendar year. The financial statement shall give the amount of money raised, together with a detailed breakdown of the cost of raising it, and final distribution, and shall be prepared by a certified public accountant or a licensed public accountant and filed in the Metropolitan Clerk's Office and the office of the Director.

(l) A full statement of the character and extent of the charitable work being done by the applicant within the area of Metropolitan Government;

(n) A statement to the effect that if a permit is granted, it will not be used or represented in any way as an endorsement by the Metropolitan Government, or by any department or officer thereof.

(o) Such other information as may be reasonably required by the Board in order for it to determine the kind and character

of the proposed solicitation and whether such solicitation is in the interest, and not inimical to, the public welfare.

. . . . .

(q) On or after July 1, 1978, each application shall contain the registration number issued by the Secretary of State as required under Chapter 735 of the Public Acts of 1977, unless the applicant is exempted from registering with the State under the preceding act.

(r) The applicant will provide the dates of the fiscal year of the applicant.

(s) The person or representative of the applicant shall appear before the Board at the time of the hearing on the application in order to answer any questions which the Board may wish to ask. If said personal representative fails to appear at the next regularly scheduled meeting of the Board for a hearing on the application, then said application shall be deferred until the next regularly scheduled meeting of the Board. In the event that no personal representative of the applicant appears at such second regularly scheduled Board meeting, then the application will be deemed denied.

(t) Telephone solicitations shall not be made by any professional solicitor or his agent, servant, or employee in any manner whatsoever.

Section 15 of the Ordinance requires that the application shall be sworn to or affirmed. In addition, it grants two exceptions in the following language:

> Provided further, that the provisions of this section shall not apply if the religious organization has in its possession and provides to the Director a copy of a tax determination letter in which the Internal Revenue Service determines that said organization is tax exempt as a charitable or religious organization, and if the religious organization also provides the Director with a sworn statement that no more than twenty-five percent (25%) of the organization's financial support is solicited from sources outside its own membership or congregation.

Section 15 further provides that on receipt of the application (as hereinbefore defined), the Director shall forthwith issue a certificate of registration which has a life of 6 months.

Section 11 of the Ordinance authorizes the Board to investigate the affairs of any person soliciting for religious purposes and to make public their written findings in order that the public may be fully informed as to the affairs of any of such persons. The solicitor shall make available to the Board or its representatives all books, records, and *other information* reasonably necessary to fully and fairly inform the public of all facts necessary to a full understanding by the public of the work and methods of operation of such persons.

> The term "person" is defined as follows: (e) "Person" shall mean any individual, firm, co-partnership corporation, company, association, or joining stock association, church, religious sect, religious denomination, society, organization or league, and includes any trustee, receiver, assignee, agent or other similar representative thereof.

Pursuant to the authority of such ordinance, an application form was promulgated and put in effect. This application tracked the ordinance application requirements, *supra*, except that the word "religious" was substituted for "charitable", i. e., section 24 of the form is: "Attach full statement of the *character and extent of the religious work* being done by applicant within the area of the Metropolitan Government."

Despite repetition, it is important to set forth certain of the powers of the Board and the mandatory content of the application:

> *Powers:*
> (h) To have access to and inspect books, records, papers, and facilities of applicants or of anyone making solicitation in the area of Metropolitan Government.
> (i) To investigate the methods of making any solicitations, or to delegate this investigatory power to any person specifically

approved by the Board to make such investigation.

.    .    .    .    .

(k) To determine in all cases where questions arise, if specific items in any applicant's fund-raising solicitation program should properly be designated as campaign costs and supplemental expenses, and the uniform accounting practices in accordance with the standards. Accounting and financial reporting for voluntary health and welfare organizations will be mandatory.

*Application:*

(c) The purpose for which such solicitation is to be made, the total amount of funds proposed to be raised thereby, and the use or disposition to be made of any receipts therefrom;

(d) A specific statement, supported by reasons and, if available, figures, showing the need for the contributions to be solicited;

.    .    .    .    .

(i) The estimated cost of the solicitation relative to said solicitation which shall include but not be limited to

(1) printing

(2) telephone

(3) mail

(4) rental fees

(5) professional entertainment

(6) any and all related expenses.

(j) The amount of any wages, fees, commissions, expense or emoluments to be expended or paid to any person in connection with such solicitation, and the names and addresses of all such persons;

(k) A financial statement shall be required from every applicant who has previously been issued a permit by the Board, setting forth the amounts and all funds collected for charitable purposes in the preceding fiscal or calendar year. The financial statement shall give the amount of money raised, together with a detailed breakdown of the cost of raising it, and final distribution, and shall be prepared by a certified public accountant or a licensed public accountant and filed in the Metropolitan Clerk's Office and the office of the Director.

(*l*) A full statement of the character and extent of the charitable work being done by the applicant within the area of the Metropolitan Government.

.    .    .    .    .

(*o*) Such other information as may be reasonably required by the Board in order for it to determine the kind and character of the proposed solicitation and whether such solicitation is in the interest, and not inimical to, the public welfare.

.    .    .    .    .

(s) The person or representative of the applicant shall appear before the Board at the time of the hearing on the application in order to answer any questions which the Board may wish to ask. If said personal representative fails to appear at the next regularly scheduled meeting of the Board for a hearing on the application, then said application shall be deferred until the next regularly scheduled meeting of the Board. In the event that no personal representative of the applicant appears at such second regularly scheduled Board meeting, then the application will be deemed denied.

It is immediately apparent that the Board may:

(a) inquire into the need to further the religious beliefs,

(b) ascertain the methods of solicitation and/or solicitations,

(c) ascertain the allocation of costs anticipated by the religious group,

(d) investigate the intimate financial condition of the religious organization certified by an accountant,

(e) ascertain the full extent, i. e., methods, means, membership, church services, soliciting, dissemination of written or oral beliefs, ad infinitum, of the religious work being done in Davidson County, and

(f) ask for such other information as the Board may reasonably require to *determine whether the solicitation is in the interest and not inimical to the public welfare.*

No standards were fixed and thus we have a subjective thicket without objective criteria.

■ The thrust of the ordinance and official application gives the Board and its personnel the power to delve into both the religious and financial workings of religious organizations previously authorized by the State to operate as legitimate. It can ascertain its motives for raising money, the extent thereof, the uses to which its funds are put, plus the power of the Board to say that it disapproves. In addition, the Board has the power to investigate in depth the financial condition and religious success of any applicant. Throughout the entire procedure there is an appraisal of facts, the exercise of judgment, and the formation of opinion.

The regulations herein challenged are not · sufficiently narrow, objective, or definite and fail to pass the muster of constitutional scrutiny. Section 15 of the Ordinance requires a "religious" applicant to provide detailed information to the defendants and refers the applicant to Section 6 of the Ordinance which contains a list of some 20 items (exempting religious groups from "m" and "p") which must be complied with before a "registration certificate" can be issued. However, the Ordinance fails to define or specify with sufficient particularity what words and phrases such as "full statement," "character" and "charitable work" mean (Section 6(1)) or requires "such other information as may be reasonably required . . . ." (Section 6(o)). Here again we find words such as "reasonably required" or later in the same section, "kind" and "character," "inimical to the public welfare." In addition, Section 6(s) requires the applicant to appear before the Board to "answer any questions which the Board may wish to ask." These provisions contain absolutely no standards by which the Board or Director can judge what information is really necessary.[1]

The defendants postulate that although the Ordinance is being attacked as being facially unconstitutional, the court should judge its legality by the manner in which it is being administered. The court is not aware of any such principle of constitutional law.

■ In situations where there is an effort by law to diminish First Amendment rights, to be constitutionally sufficient such law must be narrow, objective and set forth definite standards. *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). Without becoming involved in the quagmire of what standard to use in judging the constitutionality of the statute, i. e., rational basis, compelling state interest, severe scrutiny, substantial governmental interest, etc., suffice it to say that the activity of the plaintiffs is protected by the First Amendment.[2] *Shuttlesworth v. Birmingham, supra; Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943). *See also Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). In addition, the Board has been vested with subjective discretion in determining what is in the best interest of the public. Furthermore, the Board may, in depth, inquire into the financial affairs of the applicant. It can, in effect, require the applicant to disclose the manner of the allocation of its funds in terms of salary of employees, expenditure on buildings, religious propaganda, etc. In fact, the Board has unfettered power to obstruct the collection of funds for religious purposes. The Board thus can not only directly interfere with the furtherance of religious purposes, it can become inmeshed into the financial and religious interworking of the applicant institution.[3] *See generally Hynes v. Mayor of Oradell*, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *Cherris v. Amundson*, 460 F.Supp. 326 (E.D.La.1978); *Surinach v. Pesquera de Busquets*, 604 F.2d 73 (1st Cir. 1979).

1. Vagueness.

2. Overbreadth.

3. Entanglement.

320

The court holds that Ordinance 78–1022, insofar as it applies to applications by religious organizations, is unconstitutional and its enforcement is hereby enjoined.