**CHURCH OF SCIENTOLOGY FLAG SERVICES ORG., INC., Plaintiff,**

v.

**CITY OF CLEARWATER, et al., Defendants.**

No. 84–719–CIV–T–17.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 4, 1991.

Paul B. Johnson, Johnson, Paniello & Hayes, Tampa, Fla. (Eric Lieberman, Katherine Stone, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, New York City, of counsel) Lawrence E. Heller, Lenske, Lenske & Heller, Woodland Hills, Cal., for plaintiff.

Lawrence R. Velvel, Nashua, N.H., Alan S. Zimmet, Sargent, Repka and Covert, M.A. Galbraith, Jr., City Atty., City of Clearwater, Clearwater, Fla., for defendants.

## ORDER ON MOTIONS

KOVACHEVICH, District Judge.

This cause is before the Court on the following:

Dkt. 80 Motion for partial summary judgment on the issue of standing by Plaintiff and request for oral argument on this motion by Plaintiff, filed July 23, 1987.

Dkt. 81 Memorandum of law in support of motion for partial summary judgment by Plaintiff, filed July 23, 1987.

Dkt. 82, 83, 84 Affidavits of Professor Lonnie D. Kliever, Frank K. Flinn, and Reverend James Sydejko, filed July 23, 1987.

Dkt. 105 Motion for partial summary judgment by Plaintiff, filed January 15, 1988.

Dkt. 106 Motion for summary judgment by Defendants Clearwater, Goudeau, and Galbraith, filed January 15, 1988.

Dkt. 108 Memorandum of law in support of Defendants' motion for summary judgment with exhibits, filed January 15, 1988.

Dkt. 109 Memorandum of law in support of motion for partial summary judgment by Plaintiff, filed January 15, 1988.

Dkt. 110 Affidavits/exhibits in support of Plaintiff's motion for partial summary judgment, filed January 15, 1988.

Dkt. 111 Request for oral argument on the issues of motion for summary judgment by Defendants, filed February 16, 1988.

Dkt. 112 Memorandum of law in opposition to Plaintiff's motion for summary judgment with exhibits 1–4 attached yet filed under separate cover by Defendants, filed February 16, 1988.

Dkt. 113 Memorandum of law in opposition to Defendants' motion for summary judgment with Exhibit A attached by Plaintiff, filed February 16, 1988.

Dkt. 116 Reply memorandum in support of its motion for partial summary judgment by Plaintiff, filed March 15, 1988.

Dkt. 117 Reply memorandum to Plaintiff's memorandum in opposition to Defendants' motion for summary judgment by Defendants. (Exhibit, Deposition Excerpts and Case Authorities attached), filed March 16, 1988.

Dkt. 129 Notice of filing documents in support of motion for summary judgment and in opposition to Plaintiff's motion for summary judgment by Defendants (Documents filed under separate cover), filed January 20, 1989.

Dkt. 133 Supplemental memorandum of points and authorities in support of motion for partial summary judgment and in opposition to motion for summary judgment by Plaintiff, filed July 11, 1989.

Dkt. 137 Motion to strike memorandum of points and authorities in support of motion for partial summary judgment and in opposition to motion for summary judgment by Defendants, filed July 26, 1989.

Dkt. 139 Memorandum in response to Defendants' motion to strike Plaintiff's supplemental memorandum and request to permit the filing and consideration of supplemental authorities by Plaintiff, filed August 18, 1989.

Dkt. 143 Motion to strike letter of July 16, 1990 and memorandum in support by Plaintiff, filed August 9, 1990.

Dkt. 144 Response to Plaintiff's motion to strike and Defendants' motion for leave to file notice of supplemental authorities and memorandum in support by Defendants, filed August 22, 1990.

The cross motions for summary judgment require this Court to determine whether Church of Scientology Flag Service Organization, Inc. has standing to sue in this matter and whether Clearwater Ordinance 3479–84 regulating charitable contributions is constitutional.

The Court finds that Scientology has standing and that all provisions of Clearwater Ordinance 3479–84 are constitutional. Therefore, the Court grants Scientology's motion for partial summary judgment on the issue of standing, but denies summary judgment on all other issues. The Court denies Defendant Clearwater's motion for summary judgment on the issue of standing, but grants summary judgment on all other issues. The Court's reasoning is set out below.

## BACKGROUND

Defendant City of Clearwater (Clearwater) is a municipality of the State of Florida. In 1975, Plaintiff Church of Scientology Flag Services Organization, Inc. (Scientology) established a major base in Clearwater. Scientology rests almost entirely upon the writing L. Ron Hubbard. *Founding Church of Scientology of Washington, D.C. v. United States,* 409 F.2d 1146, 1153 (D.C.Cir.), *cert. denied* 396 U.S. 963, 90 S.Ct. 434, 24 L.Ed.2d 427 (1969). In the early 1950's Hubbard wrote tracts elucidating what he called Dianetics. Dianetics is a theory of therapeutic mind techniques, based on the idea that man possesses both a reactive mind and an analytic mind. The analytic mind is comparable to a superior computer, incapable of error and human misjudgments that create social problems and individual suffering. The reactive mind is made up of patterns imprinted on the nervous system in moments of pain, stress or unconsciousness. These patterns are called engrams. Engrams are triggered by stimuli associated with the original imprinting, and produce unconscious or conditioned behavior that is harmful or irrational. The reactive mind makes the errors and misjudgments that create social problems and individual suffering. *Id.*

Supposedly, Dianetics is a practical science that can cure many of man's problems

by erasing the old imprinted engrams. According to Dianetics theory, the ordinary person, encumbered by the engrams of his reactive mind, is a preclear, similar to a computer that contains previously programmed instructions. Just as computer program instructions can be erased, a person's imprinted engrams can be erased. Dianetics' goal is to erase the programs and make persons clear, thus freeing the rational and analytic mind. *Id.*

The process of working toward clear is described as auditing. An auditor asks the person being audited a set of structured questions and drills, called rundowns, leading the subject or preclear along his time track discovering and exposing engrams along the way. The auditor's goal is to detect the buttons that indicate a conscious or subconscious response to the rundown and enable the subject to identify his or her own engrams. Although the auditor works one-on-one with a preclear, the content of each session is not individually tailored. The process of auditing allegedly improves the physical as well as the spiritual condition of the subject. *Id.*

The E-meter plays an important part in the process of auditing. The E-meter is a skin galvanometer, similar to those used in lie detector tests. The subject holds two tin soup cans in his hands. The cans are attached to an electrical device. A needle on the device registers changes in the electrical resistance of the subject's skin when the subject answers the auditor's questions often addressing personal, intimate and confidential subject matters. Supposedly the auditor, using a set of complex rules and procedures, can identify the subject's emotional reaction to the questions by the analyzing the needle movement. Then the auditor uses the analysis to diagnose the mental and spiritual condition of the subject. Scientology provides doctrinal courses known as training for becoming an auditor. Like auditing courses, training courses are provided in sequential levels. *Id.* Auditors are sometimes young persons with no training other than having been audited themselves for a short period of time. (Memorandum of Law in Support of Defendants' Motion for Summary Judg-

ment [Defendants' Support Memorandum], p. 2 (citing Transcript of hearings held by Clearwater's City Commission at vol. I, page 50 [hereinafter "Tr. at vol. pg."])). Auditors are paid directly by Scientology. *Founding Church of Scientology of Washington, D.C.*, 409 F.2d 1146.

Scientology receives most of its income from auditing and training, although it also sells E-Meters, books and tapes. *Id.* Scientology charges a fixed donation, also known as a price or a fixed contribution, for auditing services. *Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, 109 S.Ct. 2136, 2141, 104 L.Ed.2d 766 (1989) (citing *Church of Scientology of California v. Commissioner of Internal Revenue*, 823 F.2d 1310 (9th Cir.1987), *cert. denied*, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988)). The charges are set out in schedules. In 1972, auditing charges ranged from $625 for a twelve and one half hour session to $4,250 for a one hundred hour intensive session. *Id.* The system of mandatory fixed charges is based on Scientology's doctrine of exchange that requires an even balance between what a person pays to the organization and what he receives in return. *Id.* Scientology promotes auditing sessions through newspaper, magazine and radio advertisements and also through free lectures, free personality tests and leaflets. *Id.* In addition, Scientology encourages prepayment for the auditing services and allows a five percent discount for advance payment. *Id.*

Scientology will refund unused portions of prepaid auditing or training fees, less an administrative charge if the audited person believes that he or she has not received religious or spiritual benefit from his participation in the organization's activities. (Plaintiff's Memorandum in Support of Motion for Summary Judgment [Plaintiff's 1988 Support Memorandum], p. 5, note 5; Support Affidavits and Exhibits; Supplemental Sydejko aff., pp. 2–3, pars. 5, 6). "There is no membership in the Church as such; persons are accepted for auditing on the basis of their interest in Scientology (and presumably their ability to pay ...)" *Founding Church of Scientology of Wash-*

*ington, D.C.*, 409 F.2d 1146. Payments for auditing services are not deductible charitable contributions under the Internal Revenue Tax laws because participants receive *quid pro quo* for their money. *Hernandez*, 109 S.Ct. 2136.

The Clearwater organization brings people from all over the world to receive Scientology training. In 1982, Clearwater, on the basis of complaints from the community about Scientology's activities (Defendants' Support Memorandum, p. 3 (citing Tr. at I 5)), held a series of legislative hearings to determine whether the municipality should initiate any action on the complaints. (*Id.* at I 5). The complaints included allegations of fraud based on the failure of auditing to provide promised physical, mental and other benefits, (*Id.* at I 7, 8) and on Scientology's failure to give promised refunds (*Id.* at III 81)

## FACTS

1. On October 6, 1983, Defendant City of Clearwater (Clearwater) enacted Ordinance No. 3091–83, to become effective January 31, 1984. The purpose of the ordinance was to regulate charitable solicitations within the city. The ordinance required charitable organizations that wanted to solicit funds in Clearwater to register with the City, maintain specified records, disclose the sources and uses of their contributions, refrain from engaging in fraudulent solicitation practices and submit to an investigation by the City Attorney if ten or more individuals complained about the organization's activities. Clearwater patterned the ordinance after a similar Houston ordinance, upheld as constitutional by the Fifth Circuit Court of Appeals. *See International Society of Krishna Consciousness of Houston, Inc [ISKCON] v. City of Houston*, 689 F.2d 541 (5th Cir. 1982) [hereinafter *Houston*].

2. On January 20, 1984, Americans United for Separation of Church and State (Americans United) brought an action in the Federal District Court of the Middle District of Florida (the Court) to enjoin Clearwater from enforcing the ordinance.

Americans United claimed that the ordinance was unconstitutional.

3. On January 23, Scientology brought a separate action for injunctive relief on similar constitutional grounds. Both Plaintiffs moved for temporary restraining orders pursuant to Rule 65(b) of the Federal Rules of Civil Procedure.

The Court, pursuant to Rule 65(a)(2), F.R.Civ.P., consolidated the parties' motions for injunctive relief with the trial on the merits, and scheduled a hearing on the issue of a permanent injunction. At the hearing, the parties requested the Court to limit the scope of the hearing to the facial validity of the ordinance. Clearwater stated that it would not challenge Scientology's standing, except as to the claims alleging that the ordinance violated the freedom of religion clauses of the first amendment. After argument on the facial validity of the ordinance, the Court directed counsel to file post-hearing Memoranda by March 16.

4. On March 15, Clearwater enacted Emergency Ordinance No. 3479–84, as an amendment to Ordinance No. 3091–83. The amended ordinance also comprehensively regulated charitable solicitation and effectively repealed Ordinance No. 3091–83. As an emergency ordinance, No. 3479–84 would automatically expire after 90 days if not passed as a non-emergency ordinance within that time. In addition, Ordinance 3479–84 explicitly provided for its expiration in 90 days. Clearwater notified the Court and Plaintiffs of the amended ordinance.

5. On March 28, the Court determined that Ordinance No. 3091–83 was unconstitutional and permanently enjoined its application and enforcement. The Court terminated the Americans United case by granting the parties' requested injunctive relief and dismissing the case. The Court also terminated the Scientology case, granting the requested relief and dismissing all but one count of the complaint. The Court retained jurisdiction for the enforcement of the executory provisions of its order.

6. On April 5, Clearwater appealed the District Court's injunctive orders as to Clearwater Ordinance 3091–83, pursuant to

28 U.S.C. § 1292(a)(1) (1982). Section 1292 provides that Courts of appeals have jurisdiction of appeals from interlocutory orders of the District Court's granting or refusing to grant injunctions.

7. On April 20, Scientology, seeking to enjoin the enforcement of Emergency Ordinance 3479–84, moved the District Court for leave to amend the remaining count of its complaint. The proposed amendment set out the same constitutional challenges that Scientology had raised in opposition to the original ordinance. At the same time, Scientology moved the Court for a temporary restraining order prohibiting Clearwater from enforcing Ordinance No. 3479–84.

8. On May 17, Clearwater enacted Ordinance 3479–84 as a permanent ordinance.

9. On May 21, Americans United filed a new action in the District Court seeking injunctive relief and challenging the constitutionality of Ordinance No. 3479–84 on the grounds raised in its previous suit. Simultaneously, Americans United moved for a temporary restraining order, which the Court granted.

10. On May 24, Scientology filed a new suit, seeking essentially the same relief as Americans United. Scientology's action asks for declaratory and injunctive relief. Scientology contends that:

A) The amended ordinance was enacted to single out Scientology for harassment and persecution in violation of the establishment and free exercise clauses of the first amendment and the equal protection and due process clauses of the fourteenth amendment;

B) On its face and as applied to all religious groups, the amended ordinance violates the first, fourth, fifth and ninth amendments of the United States Constitution; sections 2, 3, 4, 5, 9, 17, and 23 of Article I of the Florida Constitution; Florida Statutes § 166.041(3)(a); and Clearwater City Charter § 2.09. Scientology alleges that the case arises under 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 2201 and 2202.

11. The two Scientology cases and the American United case challenging the amended ordinance 3479–84 were not consolidated by the District Court.

12. On July 13, the District Court heard argument of Americans United and Scientology counsel at a scheduled hearing limited to the question of the facial constitutionality of Ordinance 3479–84. The Court consolidated Plaintiffs' applications for preliminary injunctive relief with the trial on the merits pursuant to Rule 65(a)(2). The Court found that Ordinance 3479–84 was facially constitutional. However, the Court encouraged an immediate interlocutory appeal to the Eleventh Circuit Court of Appeals, pursuant to 28 U.S.C. § 1292(b) (1982). The Court also issued a temporary restraining order enjoining Clearwater from enforcing the ordinance pending the disposition of any appeals that might be taken. In its written orders, the Court converted its temporary restraining orders to preliminary injunctions prohibiting Clearwater from enforcing the portions of the Ordinance 3479–84 that dealt with a charitable organization's obligation to register with the city and to maintain certain records.

13. On July 31, Scientology moved the District Court, in both of its cases, for a temporary restraining order prohibiting Clearwater from enforcing *all* provisions of the Ordinance 3479–84. Scientology also moved the Court to schedule an evidentiary hearing on its pending application for a preliminary injunction.

14. On August 2, the Court denied Scientology's motion for a temporary restraining order prohibiting Clearwater from enforcing Ordinance 3479–84 and denied Scientology's motion for a hearing on its application for a preliminary injunction.

15. On August 3, Scientology appealed the District Court's July 23 orders declaring Ordinance 3479–84 constitutional and enjoining the enforcement of less than all of Ordinance 3479–84. Scientology also appealed the District Court's August 2 order denying Scientology's motion for a temporary restraining order and a preliminary injunction.

16. On November 1, the Eleventh Circuit Court of Appeals:

A) vacated the District Court's order prohibiting Clearwater from enforcing repealed Ordinance 3091–83 because the controversy was moot; the Eleventh Circuit remanded the two cases with instructions that they be dismissed without prejudice;

B) dismissed the section 1292(b) interlocutory appeals from the District Court's determination that amended Ordinance 3479–84 was facially constitutional; the Eleventh Circuit vacated the orders that allowed the appeals to proceed;

C) affirmed the District Court's refusal to grant Scientology's applications for preliminary injunctions because Scientology failed to establish the criteria necessary for preliminary injunctive relief. The Eleventh Circuit also found that the District Court record did not support an adequate basis to justify a finding of standing.

17. On July 23, 1987, Scientology filed a motion for partial summary judgment on the issue of standing, and on January 15, 1988, filed a partial summary judgment on standing and the merits.

18. On January 15, 1988, Clearwater also filed a motion for summary judgment.

## CLEARWATER ORDINANCE 3479–84

Clearwater Ordinance 3479–84 applies to charitable organizations that solicit funds or property within Clearwater and to charitable organizations that offer within the city to make sales of property including, but not limited to books, tapes, publications and brochures whose proceeds will be used for charitable purposes. Section 100.01. The ordinance exempts organizations that annually collect monies from less than twenty people in Clearwater or that annually collect less than $10,000 there. Section 100.02.

Covered organizations must file a registration statement with the City Clerk. Section 100.03. The statement requires the organization to provide information about the collection and disbursement of funds, including names, addresses, and phone numbers of the soliciting organization, the person in charge of soliciting funds in Clearwater, and the person authorized to disburse those funds; a description of the soliciting organization, the methods of solicitation and the use to be made of the funds; the time period of the solicitation; and estimate of salaries, fees and costs to be incurred in soliciting; the names of organization officials or solicitors who have been convicted of serious crimes in the last five years; the names of other Florida cities in which the organization has solicited; and a statement that the organization maintains records or documents necessary to file the registration statement. The registration is a public document.

An organization that files similar information elsewhere may submit that filing in lieu of the registration statement. An organization that solicits only from members may provide the information to its members in a private statement, available only to members, in lieu of the registration statement. The organization must prepare the statement at least annually, must maintain the underlying records for three years from the date of each statement, and must make the records and statement reasonably available for inspection by each member of the charitable organization. Section 100.-02(3).

After an organization files its registration statement, the City Clerk must either issue a Certificate of Registration within ten working days or tell the organization what required information is missing from the statement. Section 100.03(2). If the Clerk does not issue a Certificate of Registration, the organization can continue to solicit in Clearwater without the statement until the Clerk's decision is upheld by a court. Section 100.03(3). The City bears the burden of initiating court proceedings, which it must do within ten working days of the refusal of a permit. *Id.* In such proceedings, the organization can show that the missing information should not be required because furnishing it would impose a special hardship on the organization. Section 100.03(4).

The registration statement is effective for one year. Sixty days after the year is

over, the organization must file a statement containing information as to the amount of funds and property collected in Clearwater during the year; the costs incurred for wages, fees, advertising, and other expenses; and the utilization of the proceeds in approximate amounts. Section 100.03(8).

Under the ordinance, certain acts are unlawful. These include willful failure to file required statements or knowingly filing false statements, fraud or misrepresentation to obtain money or property; promising any person that the proceeds of a solicitation of funds will be refunded upon request, and thereafter willfully failing to make a written refund request within 60 days; promising any person that he or she will receive a refund upon request without providing a written statement of the refund terms and conditions; knowing misrepresentation that a donor will obtain a federal tax deduction, willful use of solicited funds to commit a crime, and willful failure to maintain required records. Section 100.05.

The City Attorney is empowered to investigate alleged violations of the ordinance, but only if he has received ten bona fide, sworn complaints setting forth facts showing a violation and harm. Section 100.-06(1). In an investigation, the city attorney can subpoena persons and records, Section 100.06(2), but he has no power to enforce his subpoenas and must go to court for enforcement. If an investigation shows probable cause to believe a violation exists, the City Attorney can prosecute. Section 100.06(3). Finally, the statute contains an explicit severability clause. Section 10.

## STANDARD FOR SUMMARY JUDGMENT

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983) All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979), (quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969)). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial.

*Id.* at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(e) therefore, requires that the moving party go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing there is a genuine issue for trial." *Celotex, supra* at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. This Court is satisfied that no factual disputes remain which preclude summary judgment.

## A. WHETHER SCIENTOLOGY HAS STANDING TO SUE.

■ Standing to sue is an aspect of Article III that limits federal judicial power to the resolution of cases and controversies. "A threshold question in every federal case is whether the Plaintiff has made out a justiciable case or controversy within the meaning of Article III." *Church of Scientology Flag Service Organization v. City of Clearwater*, 777 F.2d 598, 606 (11th Cir. 1985) *cert. denied*, 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 656 (1986) (citing *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975)). Determination that a litigant has standing to sue is a preliminary jurisdictional matter that should be decided "without consideration of the likelihood of the litigant's success on the underlying merits of the case." *Saladin v. City of Milledgeville*, 812 F.2d 687,

690 n. 4 (11th Cir.1987). The essence of the inquiry is ...

> whether the parties seeking to invoke the court's jurisdiction have alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.

*Larson v. Valente*, 456 U.S. 228, 238–39, 102 S.Ct. 1673, 1680, 72 L.Ed.2d 33 (1982) (citations omitted).

■ Standing includes constitutional and prudential requirements. To satisfy the minimum constitutional requirements, a plaintiff must show a) that he personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; b) that the injury is fairly traceable to the challenged action; and c) that the injury is likely to be redressed by a favorable court decision. *See, e.g., Larson*, 456 U.S. at 239, 102 S.Ct. at 1680; *Valley Forge Christian College v. American United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *see also Church of Scientology Flag Service Organization*, 777 F.2d at 606.

### Constitutional Issues

*Actual or Threatened Injury.* In some circumstances, a charitable solicitation registration requirement will confer standing on a litigant to contest the law. *Larson v. Valente*, 456 U.S. 228, 241, 102 S.Ct. 1673, 1681, 72 L.Ed.2d 33 (1982). Scientology claims that the Clearwater ordinance does so. Scientology claims that it meets the injury test because it maintains and operates a facility exclusively for training and auditing in the City of Clearwater. (Hugh Wilhere aff., par. 4) and directs its Clearwater activities toward those who come to its facility to avail themselves of the facility's services. Scientology solicits money in Clearwater, and does so almost exclusively in the course of offering participation in the services of auditing and training. (*Id;* Sydejko aff., par. 18). Scientology also advertises and sells religious books to the general public, as well as to those involved with the Scientology organization in Clearwater. (Wilhere aff. par. 4; Sudejko aff. par. 19).

Scientology further alleges that it will suffer injury if Ordinance 3479–84 is enforced because Scientology is a charitable organization as defined by the ordinance: an organization "which is or holds itself out to be a religious" organization. Section 100.01(1). Scientology also engages in "solicitation of funds" as that term is defined in the statute since it requests money for the organization in the course of offering literature and participation in services and training.

The ordinance requires that charitable organizations soliciting funds in Clearwater file registration and disclosure statements with the city. Organizations and individuals may at some time be subject to penalties under the ordinance. Therefore, Scientology claims that it meets the injury in fact prong of the constitutional test.

*Traceable Connection to the Challenged Action.*

Scientology claims that it meets this prong of the constitutional requirements test because the reporting and registration requirements directly impact the organization's solicitation in Clearwater and the ordinance guidelines concerning refunds impact the organization's policies concerning refunds.

*Redress By a Favorable Decision.* Scientology claims that its injuries are likely to be redressed by a favorable decision. Scientology is seeking a declaration that the ordinance is unconstitutional on its face and as applied to religions and other charitable organizations, and in particular, Scientology, and is seeking a permanent injunction against enforcement of the ordinance. (*See* Complaint, Prayer for Relief, pars. A–D). Such a ruling would redress almost all of the organizations' injuries.

In addition, Scientology seeks to enjoin enforcement of the ordinance provisions that require disclosure of solicitations from members, or on their own premises, and the provisions that set out guidelines for refund policies. A favorable decision on

these issues would redress Scientology's alleged injuries in these areas.

### Prudential Issues

■ In addition to the essential constitutional requirements a court must consider the case in light of three principles that might counsel judicial restraint, referred to as prudential considerations. *See Valley Forge Christian College,* 454 U.S. at 471, 474, 102 S.Ct. at 757, 759. While not jurisdictional, they are invoked to "limit the role of the courts in resolving public disputes." *Warth,* 422 U.S. at 500, 95 S.Ct. at 2206. These considerations are (1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; (2) whether the complaint raises abstract questions amounting to generalized grievances that are more appropriately resolved by the legislative branches; and (3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interest of third parties; *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

*Zone of Interest.* Scientology contends that it meets the first prong of the prudential requirements test because the Clearwater ordinance *arguably* infringes on the zones of interest protected by the first amendment's associational, speech and religious guarantees. *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) (emphasis added). Scientology claims that because the ordinance fails to exclude, from the reporting requirement, charitable contributions from its members, or on its premises, the ordinance violates the organization's first amendment rights.

Scientology further contends that the registration and reporting requirements and enforcement provisions infringe on associational and religious rights by permitting surveillance into Scientology's affairs and by pressuring Scientology to adopt certain policies and practices. In addition, Scientology claims that the ordinance provisions requiring the licensing of public solic-

itation and sale of literature infringe on first amendment rights of free expression and free exercise of religions.

*Distinct Concrete Injury.* Scientology claims that it meets the second element of the prudential requirements test because the ordinance inflicts a distinct, concrete injury on a limited set of charitable organizations, which specifically includes the Scientology organization. In addition, Scientology alleges that the legislative history of the ordinance shows that the ordinance is aimed at Scientology. (Wilhere aff., par. 7 & 8).

*Legal Claims Raised.* Scientology claims that it meets the third element of the prudential requirements test because it can invoke the constitutional protection afforded all organizations for associational and expressive activities, whether they are religious or not. *See Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Further, Scientology claims that it has standing to raise the legal claims because it is a religion, or because the overbreadth doctrine would give it standing. In reality, almost all of Scientology's arguments are premised on its claim to be a religious organization.

### Scientology's Standing To Raise Legal Claims As a Religion

■ American courts have adopted an expansive definition of religion. *Seeger v. United States,* 380 U.S. 163, 174, 180, 85 S.Ct. 850, 858, 861, 13 L.Ed.2d 733 (1965). Determining whether a set of beliefs is a religion under a modern definition of religion would include consideration, among other things, of whether the ideas or beliefs in question address issues of fundamental or ultimate concern, whether the ideas are combined into a comprehensive belief-system and whether there are any formal, external, or surface signs that may be analogous to accepted religions. Such signs might include formal services, ceremonial functions, clergy, and efforts at propagation. *Malnak v. Yogi,* 592 F.2d 197 (3d Cir.1979) (Adams, J., concurring).

The affidavits submitted by Scientology indicate that Scientology meets some of the modern definitional elements of religion. (*See* Reverend Sydejko aff., par. 4, 9, 10, 11, 12, 13; Dr. Frank Flinn aff., par.s 9, 10, 12, 13, 14; Kliever aff., par.s 6, 7–12, 13, 16, 17). Scientology is incorporated as a church and it has ministers with the legal authority to marry and to bury. The fundamental writings of the church contain a general account of man and his nature comparable in scope to that of some recognized religions. *Founding Church of Scientology of Washington, D.C.*, 409 F.2d at 1154. Scientology is propagated by a mother church in California and by numerous branch churches around the world. The mother church instructs laity, trains and ordains ministers, and creates new congregations. Branches, known as franchises or missions, provide Scientology services at the local level. *Id.* The affidavits address *only* the religiosity of Scientology's beliefs; they do not address the religiosity of Scientology's activities.

■ Although American courts have adopted an expansive definition of religion, a party must demonstrate that it is a religion if challenged. *See Larson*, 456 U.S. at 255–256, n. 30, 102 S.Ct. at 1689, n. 30 ("[N]othing in our opinion suggests that appellants could not attempt to compel the Unification Church to register under the Act as a charitable organization not entitled to the religious-organization exemption, and put the Church to the proof of its bona fides as a religious organization."); *International Society for Krishna Consciousness, Inc. v. Barber*, 650 F.2d 430, 438 (2d Cir.1981) (It must be "determin[ed]" whether the Krishna beliefs, credos, and philosophy, as well as the particular practice of sankirtan, are sufficiently 'religious' in nature to warrant the protection of the free exercise guarantee."); *Jones v. Bradley*, 590 F.2d 294, 295 (9th Cir.1979) ("There is no prohibition ... against ruling whether or not a set of beliefs constitutes a religion when deciding if First Amendment protection apply.").

Clearwater claims Scientology has not proven that it is a religion, but "[e]ven if Scientology is a religion, the actions at issue here are commercial, and sometimes criminal, in character." (Defendants' Support Memorandum, p. 13). Defendants point out specific passages 1982 municipal hearing transcripts that illustrate illicit acts and practices allegedly carried on by Scientologists (Defendants' Support Memorandum, pp. 4–10):

Burglaries of the offices of doctors, lawyers, and government officials to obtain documents and information for use against critics or opponents (Tr. at I 89, 179, 232, 242; IV 156, 162, 260, 262, 290, 291, 292, 293, 302, 303); electronic bugging of medical offices and government offices to obtain information for use against critics or opponents (Tr. at I 121, 152; III 338–339; IV 9, 20–21, 134, 156, 321, 326, 334); "framing" opponents by manufacturing and planting false evidence (Tr. at I 40, 101, 102, 212; Iv 137, 326, 334); use of highly confidential information, which was obtained through "auditing" and was supposed to remain confidential, to blackmail persons who leave the organization (Tr. at I 75, 98, 204–205; II 24, 26–27, 61–62, 200; III 20; Iv 10, 26, 37, 61–62, 81, 116–117, 155, 173, 183, 185, 192–193, 214, 240–242, 270, 364–365); beating, kidnapping, and imprisoning persons who wished to leave the organization (Tr. at I 84–85, 99, 122–123, 242; II 24, 37, 132, 135, 183–184, 214; III 103, 271; IV 50–51, 57–58, 245–246, 287, 417–418); fraudulently inducing individuals to pay large sums of money for Scientology "training" by falsely claiming that Scientology can cure mental and physical ailments and will enable a person to achieve great success; by falsely stating that L. Ron Hubbard was a war hero, had healed himself of terrible wounds, is a nuclear physicist, and is an eminent and accomplished research scientist; and by false promises of refunds (Tr. I 73, 113–114, 124, 264–265, 269, 282, 287–288; II 104; III 81, 281; IV (, 22–23, 25, 72–73, 75–76, 108–110, 152–153, 285, 286); maintaining poor living conditions for low level Scientologists who work at church bases (Tr. at I 59–60, II 166, 249, 250–251; III 10, 11, 98, 149, 157, 188,

268, 269, 270; IV 16, 53, 98, 119–120, 228, 245–246).

Although Clearwater alleges that Scientologists commit the acts set out above, it states, "For purposes of the summary judgment motions, Defendants shall not assert that the *beliefs* of Scientology are not religious in character." (Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment [hereinafter Defendants' Opposition Memorandum], p. 3). Clearwater further states, "[S]cientology may have religious beliefs ..." (*Id.* at 5).

Scientology's beliefs developed from Hubbard's writings:

L. Ron Hubbard, writing in a science fiction magazine in the 1940's, first advanced the extravagant false claims that various physical and mental illnesses could be cured by auditing. He played a major part in developing Scientology. Thereafter, commencing in the early 1950's numerous Scientology books and pamphlets were written explaining how various illnesses can be and had been cured through auditing. These materials were widely distributed ...

Hubbard and his fellow Scientologists developed the notion of using a E-meter to aid auditing. Substantial fees were charged for the meter and for auditing sessions using the meter. Auditing was guaranteed to be successful ... Unfortunately, the Government did not move to stop the practice of Scientology and a related "science" known as Dianetics when these activities first appeared and were gaining public acceptance.... The government did not sue to condemn the E-meter until the early 1960's, by which time a religious cult known as the Founding Church of Scientology had appeared. This religion, formally organized in 1955, existed side-by-side with the secular practice of Scientology. Its adherents embrace many of Hubbard's teachings and widely disseminate his writings. The church purports to believe that many illnesses may be cured through E-meter auditing by its trained ministers through an appeal to the spirit or soul of a man. As a matter of formal doctrine, the Church professes to have abandoned any contention that there is a scientific basis for claiming cures resulting from E-meter use.

*United States v. Article or Device*, 333 F.Supp. 357 (D.D.C.1971).

■ Based on the *Article or Device* court's analysis and the affidavits cited above, this Court finds that Scientology fulfills the elements of the modern definition of religion; for purposes of considering the motions for summary judgment, the Court will consider Scientology to be a religion.

### Scientology's Claim To Raise Legal Claims Under the Overbreadth Doctrine

■ The overbreadth doctrine is an exception to the rule that individuals may not litigate the rights of third parties. See *Barrows v. Jackson*, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953). "[A]n individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985).

■ Generally, where the parties challenging the facial validity of a statute are those who seek to engage in the activity that the overbroad statute purports to punish, courts will not entertain an overbreadth challenge. *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). In some cases, the overbreadth doctrine may be employed *only* if the contested regulation violates the rights of those not before the Court. *Id.* Resorting to the overbreadth doctrine in this case is not necessary since this Court has found that Scientology meets the definition of a religion for purposes of the summary judgment motions. Consequently, the Court

finds that Scientology has standing and grants Scientology's motion for summary judgement on this issue.

## FIRST AMENDMENT GUARANTEES

■ "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const.Amend. I. First amendment rights and guaranties are fundamental, but they are not absolute or unrestricted, and they are subject to reasonable limitation and control.

### Freedom of Religion

The guarantee of freedom of religion was adopted to curtail Congress' power to interfere with the individual's freedom to believe, to worship, and to express the dictates of his conscience. *Wallace v. Jaffree*, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (silent prayer law unconstitutional). Both the anti-establishment clause and the free exercise clause are applied to the states through incorporation into the fourteenth amendment due process guarantee of liberty. *Everson v. Board of Education*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (anti-establishment); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) (free exercise). The two clauses often appear to conflict, and reconciling these potentially conflicting constitutional demands is a continuing problem. The basic role of the government has been to maintain a position of neutrality. While the Court has not directly defined religion, it has indicated that non-theistic beliefs can qualify for constitutional protection. *Seeger*, 380 U.S. 163, 85 S.Ct. 850.

*The Establishment Clause.* States may not make laws respecting the establishment of religion. Courts interpret this clause broadly to prohibit laws that aid one religion, aid all religions, or prefer one religion over another. *Everson*, 330 U.S. 1, 67 S.Ct. 504.

■ In most cases, a law must satisfy each part of a three-part test to withstand an Establishment Clause challenge: (1) the law must have a secular legislative purpose; (2) the principal or primary effect of the law must neither advance nor inhibit religion; and (3) the law must not foster "an excessive government entanglement with religion." *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

Improper administrative entanglement may arise when religious and public employees must work closely together to carry out a legislative plan. *See Aguilar v. Felton*, 473 U.S. 402, 414, 105 S.Ct. 3232, 3238, 87 L.Ed.2d 290 (1985) (citing *Walz v. Tax Commissioner*, 397 U.S. 664, 674, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697 (1970)). Administrative entanglement claims commonly arise in suits to strike down government benefits to religion; *e.g.*, when government aid is followed by government investigators who must make on-site inspection to ensure that aid moneys are expended only for secular purposes. *See Aguilar*, 473 U.S. at 412, 105 S.Ct. at 3237. Day-to-day intrusion into the operation of a religious institution is entanglement. Impermissible entanglement occurs if a law allows the state to investigate the financial affairs of religious organization when the goal of the investigation is to determine whether regulation is necessary. *Surinach v. Pesquera de Busquets*, 604 F.2d 73 (1st Cir.1979).

Regulatory entanglement claims arise when parties seek to show that enforcement of a law would create excessive entanglement. *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985). Potentially, regulatory entanglement claims permit religious bodies to use the establishment clause, like the free exercise clause, as a shield from government intrusion. *See e.g., McClure v. Salvation Army*, 460 F.2d 553 (5th Cir.), *cert. denied* 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972) (religious organization exempt from some sex discrimination suits under Title VII); *Madsen v. Erwin*, 395 Mass. 715, 481 N.E.2d 1160 (1985) (Christian Science Moni-

tor, as religious organization, immune from some employment discrimination suits).

The Court has specifically criticized the three-part *Lemon* test and often departs from the test in making decisions. *See Marsh v. Chambers*, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983) (Court upheld prayers opening legislative session, emphasizing the prayer's historical acceptance making it a "part of the fabric of our society."). The Court has criticized the entanglement prong of the test because the supervision necessary to ensure that there is no entanglement becomes entanglement. *See, e.g., Aguilar*, 473 U.S. at 429, 105 S.Ct. at 3246 (O'Connor, J., dissenting); *Wallace*, 472 U.S. at 109–110, 105 S.Ct. at 2517–2518 (Rehnquist, J., dissenting); *Lynch v. Donnelly* 465 U.S. 668, 689, 104 S.Ct. 1355, 1367, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring); *Lemon*, 403 U.S. at 666–668, 91 S.Ct. at 2137–2139 (White, J., concurring and dissenting). However, the three-part *Lemon* test remains the basic standard of judicial review in Establishment Clause cases.

■ *Free Exercise of Religion.* States may not make laws that inhibit the free exercise of religion. "The freedom to hold religious beliefs and opinions is absolute." *Braunfeld v. Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961). (*See West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943)) (law requiring Jehovah's Witness to salute the flag struck down because government cannot prescribe what is orthodox in politics, nationalism, religion, or other matters of opinion). The government may not evaluate the benefits of religious practice including the truth or falsity of statements about the benefits of religious practices under any circumstances. *United States v. Ballard*, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944); *Founding Church of Scientology of Washington D.C.*, 409 F.2d 1146.

■ While freedom to believe is absolute, freedom to act pursuant to one's religion cannot be. "Conduct remains subject to regulations for the protection of society." *Cantwell*, 310 U.S. at 303–304,

60 S.Ct. at 903–904. The government has the inherent police power to regulate religious activities in a reasonable and nondiscriminatory manner, to protect the safety, peace, order, and comfort of society. *Id.* Although the state cannot punish religious views and beliefs, the state can punish the external manifestation of those views if the resulting conduct is a clear and present danger to the safety, morals, health or general welfare of the community and is violative of laws enacted for their protection. *Portland v. Thornton*, 174 Or. 508, 149 P.2d 972 *cert. denied* 323 U.S. 770, 65 S.Ct. 123, 89 L.Ed. 616 (1944).

■ An ordinance directed at conduct rather than belief, with a secular purpose and effect, and justified by governmental interest in public health and safety does not violate first amendment rights. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 723 F.Supp. 1467 (S.D. Fla.1989). The right to free exercise does not relieve an individual's obligation to comply with a "valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Employment Division, Department of Human Resources of Oregon v. Smith*, — U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), citing *United States v. Lee*, 455 U.S. 252, 263 n. 3, 102 S.Ct. 1051, 1058 n. 3, 71 L.Ed.2d 127 (1982) and *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944). An ordinance that could constitutionally apply to a wide range of conduct other than the conduct of the challenging religious group does not violate first amendment rights. *Lukumi*, 723 F.Supp. 1467 (municipal ordinances regulating ritual sacrifice of animals not unconstitutional).

When community problems exist, a city ordinance triggered by the conduct of a particular group is constitutionally valid if the purpose of the ordinance is to address the community problem. *Id.* The first amendment does not require strict religious neutrality. *See Wallace*, 472 U.S. at 82–83, 105 S.Ct. at 2503–2504 (O'Connor, J., concurring); *McDaniel v. Paty*, 435 U.S. 618,

639, 98 S.Ct. 1322, 1334, 55 L.Ed.2d 593 (1978) (Brennan, J., concurring) (noting that "government [may] take religion into account when necessary to further secular purposes"). Courts may uphold laws explicitly mentioning religious conduct so long as the laws serve a secular purpose. *See e.g., Jones v. Butz,* 374 F.Supp. 1284, 1292–93 (S.D.N.Y.1974).

Although laws cannot establish religion or prohibit its free exercise, laws can control criminal acts connected with religion. Criminal acts are not "any less odious" because they are sanctioned by a particular sect as religion. *Davis v. Beason,* 133 U.S. 333, 345, 10 S.Ct. 299, 301, 33 L.Ed. 637 (1890). "However free the exercise of religion may be, it must be subordinate to the criminal laws of the country ..." *Id.* at 342–343, 10 S.Ct. at 300–01. Otherwise, "the professed doctrines of religious belief [would be] superior to the law of the land," and the result would be "to permit every citizen to become a law unto himself. Government could exist only in name under such circumstances." *Reynolds v. United States,* 98 U.S. 145, 167, 25 L.Ed. 244 (1878) (quoted in *Davis,* 133 U.S. at 344, 10 S.Ct. at 301).

That the government can regulate religiously based activities in the exercise of its power to promote the health, safety and general welfare, *Wisconsin,* 406 U.S. at 220, 92 S.Ct. at 1535; *see also Bob Jones University v. United States,* 461 U.S. 574, 603, 103 S.Ct. 2017, 2034, 76 L.Ed.2d 157 (1983), is illustrated by the numerous statutes courts have upheld precluding or impairing religious actions that violate civil or criminal laws. Thus, polygamy can be banned. *Reynolds,* 98 U.S. 145; *Davis,* 133 U.S. 333, 10 S.Ct. 299. Child labor can be barred. *Prince,* 321 U.S. 158, 64 S.Ct. 438. Parents can be punished for failing to provide children with medical attention. *Hermanson v. State,* 570 So.2d 322 (Fla. 2d DCA 1990). The use of poisonous snakes in religious services can be forbidden. *Harden v. State,* 188 Tenn. 17, 216 S.W.2d 708 (1948). The use of marijuana, LSD and peyote can be punished. *Employment Division,* —— U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876. *Leary v. United States,* 383

F.2d 851 (5th Cir.1967), *rev'd on other grounds,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *State v. Bullard,* 267 N.C. 599, 148 S.E.2d 565 (1966), *cert. denied,* 386 U.S. 917, 87 S.Ct. 876, 17 L.Ed.2d 789 (1967). Violation of zoning laws can be prohibited. *Grosz v. City of Miami,* 721 F.2d 729 (11th Cir.1983), *cert. denied,* 469 U.S. 827, 105 S.Ct. 108, 83 L.Ed.2d 52 (1984).

Even neutral laws of general application that *significantly burden* religious liberty may be constitutional. *Lee,* 455 U.S. 252, 102 S.Ct. 1051 (mandatory and continuous participation in the social security system vital to integrity of the system); *Tony & Susan Alamo Foundation,* 471 U.S. 290, 105 S.Ct. 1953. However, the government must avoid administrative entanglement with religious institutions. *Walz v. Tax Commission of the City of New York,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970); *Lemon,* 403 U.S. 602, 91 S.Ct. 2105. Generally applicable administrative and recordkeeping regulations may be imposed on religious organizations without violating the first amendment. Routine regulatory interaction that involves no inquiry into religious doctrine, no delegation of state power to a religious body, and no detailed monitoring and close administrative contact between secular and religious bodies does not violate the non-entanglement command. *Jimmy Swaggart Ministries v. Board of Equalization of California,* —— U.S. ——, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990) (citing *Hernandez,* 109 S.Ct. 2136).

Until recently, government actions that burdened religious free exercise had to be justified by showing that the government had a compelling purpose and no less burdensome means of achieving the purpose of the regulation. *Sherbert v. Verner,* 374 U.S. 398, 406, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965 (1963). *See also Wisconsin,* 406 U.S. at 215, 92 S.Ct. at 1533 (purpose must be of highest order). *But cf. Employment Division,* —— U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876. However, after *Employment Division, Department of Human Resources of Oregon v. Smith,*

the compelling government interest test is no longer required when the government action involves a religion-neutral criminal law. The *Employment Division* court stated:

> [g]enerally applicable, religion-neutral criminal laws that have the effect of burdening a particular religious practice need not be justified, under the free exercise of religion clause … by a compelling governmental interest because (1) if the general laws were to be subjected to a "religious practice" exemption, both the importance of the law at issue and the centrality of the practice at issue would reasonably have to be considered, (2) it is inappropriate for judges to determine the "centrality" of a belief to an individual's religion, (3) thus, if the "compelling interest" test were to be applied at all, it would have to be applied across the board, to all actions thought to be religiously commanded, (4) such a rule would open the prospect of constitutionally required religious exemptions from civic obligations of almost every conceivable kind, a result that is not required by the First amendment's protection of religious liberty, and (5) the nation cannot afford the luxury of deeming presumptively invalid, as applied to the religious objector, every regulation of conduct that does not protect an interest of the highest order; although it may be that leaving accommodation of religious practices to the judicial process will place at a relative disadvantage those religious practices that are not widely engaged in, such an unavoidable consequence of democratic government must be preferred to a system in which each conscience is a law unto itself or in which judges weight the social importance of all laws against the centrality of all religious beliefs.

To pass a constitutional challenge against infringement of the free exercise clause, a law must regulate conduct rather than belief, and the law must have a secular purpose and effect. If the law passes these threshold tests, the court balances the cost to the government of altering its activity to allow the religious practice to continue unimpeded versus the cost to the religious interest imposed by the government activity. *Grosz,* 721 F.2d at 734.

### Solicitation and the First Amendment

Public solicitation is protected under the first amendment because solicitation is a form of communication. *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 632, 100 S.Ct. 826, 833, 63 L.Ed.2d 73 (1980); *Cantwell,* 310 U.S. 296, 60 S.Ct. 900; *Fernandes v. Limmer,* 663 F.2d 619 (5th Cir.1981). However, solicitation is subject to reasonable regulation. The state has an important interest in regulating solicitation activities to avoid disturbances of the peace and to insure public safety. *Cantwell,* 310 U.S. 296, 60 S.Ct. 900. A regulation that does not involve any religious test and does not unreasonably obstruct or delay the collection of funds is constitutionally valid, even though the collection is for a religious purpose. *Id.*

A state or municipality also has an interest in prohibiting fraud in solicitation. "Public awareness of abuses in the administration of charitable fund raising practices has increased over the past twenty years." *Houston,* 689 F.2d at 541. The state can protect its citizens from fraudulent solicitation and insure that funds raised actually find their way to the organization for which the solicitation was given by requiring a stranger in the community to establish his identity and his authority to act for the cause he purports to represent before permitting him to publicly solicit funds for any purpose. *Cantwell,* 310 U.S. at 306. Disclosure is a less intrusive means for protecting citizens than prohibiting solicitation entirely. *Schaumburg,* 444 U.S. 620, 100 S.Ct. 826.

However, a solicitation regulation must bear a "reasonable relationship to the achievement of the governmental purpose asserted as its justification." *Branzburg v. Hayes,* 408 U.S. 665, 700, 92 S.Ct. 2646, 2666, 33 L.Ed.2d 626 (1972). For example, the state can require solicitors to disclose that they are professional solicitors at the time of solicitation, and can require a sub-

sequent written affirmation of the disclosure. *Indiana Voluntary Firemen's Association, Inc. v. Pearson*, 700 F.Supp. 421 (S.D.Ind.1988). However, the state cannot compel disclosure about the solicitors' contract with the charitable organization or other details that solicitors would not voluntarily disclose. *Id.* Neither can the state regulate the percentage of contributions a charitable organization expends for services of professional solicitors. *Shannon v. Telco Communications, Inc.*, 824 F.2d 150 (1st Cir.1987); *Secretary of State v. Joseph H. Munson Company*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); *Schaumburg*, 444 U.S. 620, 100 S.Ct. 826; *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988). The regulatory authority may not attempt to regulate the content of the representations made to induce contributions on the basis that the representations falsely state spiritual, emotional or other benefits that may accrue to the contributor in this world or the next. *United States v. Ballard*, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944).

■ Any regulation of public solicitation must be by the least restrictive means necessary to further the state interests. *Fernandes*, 663 F.2d 619. A regulation must not allow administrative and enforcement officials excessive discretion as to the scope or breath of the regulation. *Hynes v. Mayor and Council of the Borough of Oradell*, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *Schaumburg*, 444 U.S. 620, 100 S.Ct. 826.

An ordinance imposing a flat license tax for the privilege of canvassing or soliciting within a municipality is unconstitutional when the tax is applied to the dissemination of religious beliefs through the sale of religious books and pamphlets by solicitation from house to house. *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1954).

### Summary Judgment Contentions

Scientology alleges that: a) it meets the constitutional and prudential requirements necessary to establish standing; b) the Clearwater ordinance is unconstitutionally overbroad and violates Plaintiff's first amendment rights because the ordinance regulates fundraising by churches from their own members and on their own premises; attempts to regulate matters of internal ecclesiastical rule, custom, discipline and procedure; and regulates and requires broad financial disclosure of church fundraising for general church purposes; c) the Clearwater ordinance unconstitutionally vests excessive and vaguely defined discretion on city enforcement officials; d) the Clearwater ordinance unconstitutionally seeks to regulate and license the sale of books and literature in violation of the first and fourteenth amendments. [Throughout its motion, Scientology relies on the *Houston* ordinance to support its arguments].

Clearwater refutes Scientology's claims, argues that Clearwater Ordinance 3479-84 is constitutional on its face and that, because there are no genuine issues of material fact needing to be resolved, Clearwater is entitled to summary judgment in its favor.

### B. WHETHER THE CLEARWATER ORDINANCE IS OVERBROAD AND THUS INTERFERES WITH FREEDOM OF ASSOCIATION.

#### Freedom of Association

■ Freedom of association is not stated directly in the constitution but is implied in the first amendment. *See Tashjian v. Republication Party of Connecticut*, 479 U.S. 208, 214, 107 S.Ct. 544, 548, 93 L.Ed.2d 514 (1986) (citing *NAACP v. Alabama ex. rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958)) (freedom of association protected by first and fourteenth amendments includes partisan political organization).

The Supreme Court identified two types of associations in *Roberts*, 468 U.S. 609, 104 S.Ct. 3244. The first type is the intimate human relationship exemplified by relationships involving the creation and sustenance of a family, including marriage, childbirth, raising and educating children, and cohabitation with one's relatives. *Id.* at 619, 104 S.Ct. at 3250 (citations omitted). Intimate relationships, which demand the

fullest protection, are characterized by small numbers, a high degree of selectivity, and seclusion from others. *Id.* at 620, 104 S.Ct. at 3250. "As a general matter, only relationships with these sorts of qualities are likely to reflect the consideration that have led to an understanding of freedom of association as a intrinsic element of personal liberty." *Id.*

The second type of identified association, apposite to an intimate association, is an express association, exemplified by large business associations. *Id.* A large business association lacking the qualities of the intimate association "seems remote from the concerns giving rise to … constitutional protection." *Id.* "Between the poles lies a broad range of human relationships that may make greater or lesser claims to constitutional protection from particular incursions by the State." *Id.* Some general principles of group protection have emerged.

Generally, laws that directly punish group membership or association are invalid *See Noto v. United,* 367 U.S. 290, 297–98, 81 S.Ct. 1517, 1520–21, 6 L.Ed.2d 836 (1961); *Elfbrandt v. Russell,* 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966) as are laws that regulate internal activities such as whom to include as members and which non-members to invite to take part in the group processes. *See March Fong Eu, Secretary of State of California v. San Francisco County Democratic Central Committee,* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) (statute restricting organization and composition of official governing bodies of political parties and terms of office of state central committee invalid).

Laws that withhold a privilege or benefit from the members of a group or association and laws that compel disclosure of a group's membership or an individual's associations, where anonymity is likely to be important to the continued viability of associational ties, are also invalid. *See Gibson v. Florida Legislative Investigation Committee,* 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); *Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 463–65, 78 S.Ct. 1163, 1172–73, 2 L.Ed.2d 1488 (1958).

Laws that interfere in hierarchial religious associations' decisions regarding control of church real property, appointments to church positions and discipline are generally invalid. *See Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 710, 96 S.Ct. 2372, 2381, 49 L.Ed.2d 151 (1976) (attempt to control defrocking procedures in a religious organization invalid; courts must accept such decisions of the highest ecclesiastical tribunal as final and binding) (citing *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 727, 20 L.Ed. 666 (1872)); *Paul v. Watchtower Bible Tract Society of New York,* 819 F.2d 875 (9th Cir.1987) (religious practice of shunning is affirmative defense to suit for defamation and intentional infliction of emotional distress by church member against Jehovah's Witness organization). However, charitable and religious groups are subject to law and courts have sustained the power of enforcement officials to investigate infractions by obtaining documents and information pursuant to subpoenas and production orders. *See e.g., United States v. Coates,* 692 F.2d 629 (9th Cir.1982); *United States v. Dykema,* 666 F.2d 1096 (7th Cir.1981), *cert. denied,* 456 U.S. 983, 102 S.Ct. 2257, 72 L.Ed.2d 861 (1982); *United States v. The Freedom Church,* 613 F.2d 316 (1st Cir.1979); *In re Rabbinical Seminary Netzach Israel Ramailis,* 450 F.Supp. 1078 (E.D.N.Y.1978); *see Church of Scientology of California v. Commissioner,* 83 T.C. 381, 463–464, *aff'd* 823 F.2d 1310 (9th Cir. 1987).

### Overbreadth

 Overbreadth is concerned with the precision of a law. A statute is void on its face if it "does not aim specifically at evils within the allowable area of [government] control, but … sweeps within its ambit other activities that constitute an exercise" of protected expressive or associational rights. *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940) (statute prohibiting all picketing void

on its face since it bans peaceful picketing protected by first amendment).

The question of how overbroad a statute must be before it is subject to facial invalidation is difficult. The Supreme Court has "never held that a statute should be held invalid on its face merely because it is possible to conceive of a single impermissible application." *City of Houston v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 630, 93 S.Ct. 2908, 2925, 37 L.Ed.2d 830 (1973) (Brennan, J., dissenting)).

Testing the constitutionality of a statute on its face is to some degree "fundamentally at odds with the function of the federal courts" to resolve concrete cases and controversies. *Younger v. Harris,* 401 U.S. 37, 52, 91 S.Ct. 746, 754, 27 L.Ed.2d 669 (1971). Application of the overbreadth doctrine to facially invalidate a statute is "manifestly, strong medicine," and the Court is reluctant to resort to the doctrine. *Broadrick,* 413 U.S. at 630, 93 S.Ct. at 2925.

■■■ The overbreadth doctrine will not apply unless the protected acts affected by the statute are substantial when compared with the law's legitimate applications to unprotected acts, even when the acts in question are pure speech. *See New York v. Ferber,* 458 U.S. 747, 770–71, 102 S.Ct. 3348, 3361–62, 73 L.Ed.2d 1113 (1982). " '[S]ubstantial overbreadth' is essentially a case-by-case analysis under which the court scrutinizes the statute's apparent overbreadth, judges it 'in relation to the statute's plainly legitimate sweep,' *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2917, and ascertains whether, in relation to that 'legitimate sweep,' the statute's overbreadth is 'substantial' or 'marginal.' " *Indiana Voluntary Firemen's Association,* 700 F.Supp. 421. The overbreadth doctrine does not apply at all to commercial speech. *Friedman v. Rogers,* 440 U.S. 1, 10–11 n. 9, 99 S.Ct. 887, 894–895, n. 9, 59 L.Ed.2d 100 (1979). Closely related to the overbreadth doctrine is the less restrictive means test which requires that the means used to pursue a legitimate and substantial govern-

mental purpose must be the least restrictive means possible. *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960).

*A. Whether the Clearwater Ordinance Affects Organization–Member Relationships*

Ordinance 3479–84 requires organizations to file a registration statement or make available to its members a private disclosure statement. Scientology claims that the Clearwater ordinance is unconstitutionally overbroad because it does not exempt solicitations by charitable organizations of their own members on their own premises. Scientology claims that while Clearwater may be able to require disclosure of contributions from the public, Clearwater cannot require disclosure of contributions from members, or on the organization's premises without violating the overbreadth doctrine because freedom of association is protected by the first amendment and freedom of association prevents interference with the internal affairs of an organization.

Clearwater contends that the City can require Scientology and other organizations to disclose information because the City has a compelling government interest in preventing fraud, criminal and antisocial action and disclosure to members and the public will expose and thus prevent fraud. Clearwater argues that regulation of charitable disclosures is the least intrusive means of accomplishing the City's purpose of preventing fraud.

Clearwater argues that while the Supreme Court has ruled that disclosure laws and penal laws are both less intrusive alternatives than prohibition of solicitation, disclosure laws are even less intrusive than criminal ones. Clearwater points out that government can obtain and at trial make public the very same types of information required to be provided under a disclosure law when investigating and prosecuting crimes such as fraud under a criminal statute. But the penalty imposed at the conclusion of a criminal prosecution is jail or a fine. The only penalty imposed for accu-

rate revelation of information pursuant to a disclosure law is that a potential contributor, upon learning of the information, may decide not to contribute. Clearwater contends that the penalty of noncontribution is less intrusive than the penalty of jail or a fine. As the Fifth Circuit states, "It is difficult to see what less intrusive alternative there could be to a disclosure law." *Houston,* 689 F.2d at 550.

Clearwater claims that hierarchial religious organizations would become a law unto themselves if they were immune from laws such as Clearwater's charitable solicitation ordinance. Clearwater further contends that the private statement provision of the Clearwater ordinance provides for the exemption of organizations that solicit only from members or on their own premises, and that if an organization requires a hierarchial tenet of secrecy, then members can simply ignore the private statement. Section 100.02(3) of Ordinance 3479–84 reads as follows:

Section 100.02 Exemptions.

(3) If a charitable organization does not want to disclose publicly the information required by the statements described in Section 100.03 regarding the solicitation of funds from members of the charitable organization, it may exclude this information from the statements required by Section 100.03 if:

(a) it indicates on the statement required by Section 100.03 that information about solicitation of funds from members of the charitable organization has been excluded, and

(b) it prepares a private statement at least annually that contains all of the information required by the statements described in Section 100.03 for the solicitation of funds from members of the charitable organization that is not reported in the statements required by Section 100.03, which is signed under oath by the individual described in subparagraph 1(c) of Section 100.03, and

(c) it maintains the records and documents that are necessary to complete this private statement for a period of three years from the date of each statement, and together with the private statement, makes them reasonably available for inspection by every member of the charitable organization.

The Court examined the history of Clearwater Ordinance 3479–84 to determine the origin of the private statement provision. The Court found that Ordinance No. 3091–83, the predecessor of Ordinance 3479–84, exempted solicitation from members and on organization premises. The applicable provision of the original ordinance read:

Section 100.02 Exemptions.

(1) Notwithstanding the foregoing, a charitable organization shall be exempt from the provision of this chapter (a) if it does not receive contributions from more than 20 persons; or (b) all of its functions, including fund raising activities, are carried on by persons who are unpaid for their services; or if no part of the organizations assets or income inure to the benefit of or is paid to any officer or member; or if the solicitation is in the form of a donation or collection that occurred within the membership of the charitable organization; or if the charitable organization does not raise or receive contributions from the public ...

Section 100.01 Definitions.

(5) The term "member" shall mean any person regularly attending or participating in a charitable organization.

When this Court, in its order of March 28, 1984, found that Ordinance 3091–83 was unconstitutional, the Court addressed the membership exemption:

Clearwater Ordinance 3091–83 exempts those churches which limit their solicitations to those who regularly attend or participate in religious services (Section 100.01(5)). Churches which obtain contributions from members who participate in church services on a non-regular or episodic basis, as well as churches which do not offer, encourage, or require regular attendance or regular participation of their members are not exempt. Thus a stable church membership requiring regular attendance need not be affected by this ordinance; however, a church whose membership is

growing and actively engaged in proselytizing and fund raising falls under the regulatory scheme of this ordinance.

How can a church whose congregation or group of members is growing, ever, at any given time, indicate to civil authority the number of "members" it has in regular attendance or as participants in the organization?

If a drunk were to stagger into a church and "be saved" and then indicate an intention to dedicate his life to its purposes through regular attendance at that church, would he be a "member"?

There is absolutely no showing of any compelling state interest being furthered by the parameters of the limited membership exemption of this ordinance. This ordinance not only implies a religious preference, its mere presence could foster a stagnation of religious practice in Clearwater by impacting on growing congregations and forestalling larger, more organized churches from continuing to seek new members as well.

Clearwater amended its ordinance to include organizations that solicited from members and only on their premises, but provided a private statement provision to allow organizations that solicited only from members or only their premises to opt out of the disclosure requirement.

The comparable membership exemption provision in the Houston ordinance cited by Scientology throughout its memorandum was also found unconstitutional by the trial court judge, but for another reason. *Houston*, 689 F.2d at 553. The Houston judge ruled that the phrase "exempting organization or associations" if they solicit from their own "members" was constitutionally infirm because the terms were not defined. The judge pointed out that the "concept of membership in a religion eludes objective definition."

After the trial judge ruled the Houston exemption clause unconstitutional because it was vague, Houston did not amend its ordinance as Clearwater did. Instead, Houston appealed the trial court's decision and the appellate judge reversed, pointing out that the term "organization and mem-ber" are commonly understood and that the phrase was not vague. Therefore, the Houston ordinance contains an exemption provision for organizations that solicit from members only while the Clearwater ordinance contains an optional private statement provision that accomplishes the same purpose. Neither ordinance contains a provision exempting religious organizations.

In its brief to the Eleventh Circuit, Clearwater claims that Scientology actively participated in the early drafting of the ordinance and "when an earlier draft of the ordinance exempted solicitations by a religious organization from its own members, they [Scientology] said this discriminated against groups which solicited from the public. When the membership exemption was removed to accommodate their view, they said now the ordinance intruded on religion because it regulated the relationships between a religious organization and its members, and the only permissible regulation was of relations between a religious organization and the public." Brief for Appellees at 24, *Church of Scientology Flag Service Organization v. City of Clearwater*, 777 F.2d 598, 606 (11th Cir. 1985) (Nos. 84–3574, et al.).

Even though the availability of the private statement option appears to refute Scientology's argument that the Clearwater ordinance is unconstitutional because it fails to exempt organizations that solicit only from their members, the Court will address Scientology's other contentions, and will assume, *arguendo*, that the private statement option is not available.

Scientology cites no case law that directly supports its position that failure to exempt solicitations by charitable organizations of their own members on their own premises invalidates the ordinance. Scientology claims that *Houston*, 689 F.2d at 553, supports its view and claims that the *Houston* Court upheld the Houston ordinance because it exempted both solicitation by organizations of their members and solicitation on the organizations's own premises. *Id.* at 556. The Court disagrees with Scientology's reading of *Houston:* the *Houston* Court upheld the Houston ordi-

nance over ISKCON's objection that the ordinance was unconstitutional *because* it exempted members on their premises, thereby favoring institutionalized religions (which had members and premises on which to solicit) over uninstitutionalized religions. *Houston* did not imply that a statute requiring registration by organizations that solicited only from members would be unconstitutional. Scientology's reliance on the Houston ordinance does not support its argument on this issue.

Scientology also cites *National Foundation v. City of Fort Worth*, 415 F.2d 41 (5th Cir.1969) as support for its position. Again, the Court finds that Scientology's reliance is misplaced. The *Fort Worth* Court upheld an ordinance that exempted organizations soliciting only from members as constitutional; *Fort Worth* did not imply that an ordinance that did not exempt such organizations would be unconstitutional.

Scientology's reliance on *Watson,* 80 U.S. (13 Wall.) 679 is not clear. Under *Watson,* courts will not interfere in ecclesiastical disputes. The present situation does not involve an ecclesiastical dispute. Therefore, the Court finds that neither *National foundation* nor *Watson* support Scientology's claim for invalidation of the ordinance.

The circumstances under which the Houston and the Clearwater ordinance were enacted differ greatly. The purpose of the Houston ordinance was to protect the public. Judge Wisdom stated, "During this time [the past twenty years] as is reflected in the case law, some Krishna followers and others soliciting funds for charitable purposes, particularly in airports, parks, and public gatherings, have pursued their overzealous solicitation to the point of causing undue annoyance of the public. Many local governmental authorities have reacted by adopting regulations requiring the licensing of solicitors for charitable or religious purposes." That the Houston ordinance "exempt[ed] from disclosure requirements the internal communications between members of an organization or association" is not surprising. *Houston,* 689 F.2d at 553. "Such communications are not related to the governmen-

tal purposes of the ordinance," protecting the public. *Id.*

This Court cited *Houston* for that proposition in *Church of Scientology v. City of Clearwater,* Civ. No. 84–96 (Slip Opinion 3/28/84, p. 6). The Court pointed out that regulations such as those in the Houston ordinance should be limited to solicitation of the public in public places because activity on the organization's premises could not disturb the public and because there would not be a danger of misrepresentation by the organization when it solicited from its own members.

Many charitable solicitation cases involve ordinances designed to protect the public, and not members of the organization, against fraudulent solicitation. *See, e.g., Schaumburg,* 444 U.S. 620, 100 S.Ct. 826. In *Schaumburg* the Court said, The Village's interests "in protecting the public from fraud, crime and undue annoyance" are "indeed substantial ... Efforts to promote disclosure of the finances of charitable organizations also may assist in preventing fraud by informing the public." *Id.* at 636–8, 100 S.Ct. at 836. That such ordinances exempt charitable organizations' solicitation from members or on their premises is logical.

 However, when the purpose of an ordinance is to protect the members of the organization as well as the public against fraud, exempting solicitation from members and on the organization's premises would thwart the purpose of the statute. The purpose of the Clearwater ordinance is to prevent fraud against the members as well as the public. Therefore, the ordinance logically includes disclosure from organizations soliciting only from members, although the Clearwater ordinance provides an option by private statement to exclude such organizations. Scientology claims that an ordinance that requires disclosure but fails to exempt organization that solicit only from members is unconstitutional on its face, even when the ordinance provides an alternative private statement that allows the organization to opt out of the disclosure requirements, because the ordinance impacts its freedom of associ-

ation by interfering with intra-member relations.

This Court has evaluated Scientology's claim that the ordinance violates associational freedom and finds that Scientology's claim is without merit. First, the ordinance does not directly punish group membership or association, *See Noto v. United,* 367 U.S. 290, 297–98, 81 S.Ct. 1517, 1520–21, 6 L.Ed.2d 836 (1961); *Elfbrandt v. Russell,* 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966), nor does the ordinance regulate internal activities such as whom to include as members and which nonmembers to invite to take part in the group processes. *See March Fong Eu, Secretary of State of California v. San Francisco County Democratic Central Committee,* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989).

Nor does the ordinance withhold a privilege or benefit from the members of a group or association or compel disclosure of a group's membership or an individual's associations. *See Gibson v. Florida Legislative Investigation Committee,* 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); *Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 463–65, 78 S.Ct. 1163, 1172–73, 2 L.Ed.2d 1488 (1958).

Since there is no ecclesiastical dispute in this situation, the ordinance cannot interfere in a hierarchial religious decision regarding such things as control of church property, appointments to church positions and discipline. *See Serbian Eastern Orthodox Diocese,* 426 U.S. at 710, 96 S.Ct. at 2381 (citing *Watson,* 80 U.S. (13 Wall.) at 727); *Paul,* 819 F.2d 875.

The Court also examined the applicability of the overbreadth doctrine to the present situation. The overbreadth doctrine will not apply unless the protected acts affected by the statute are substantial when compared with the law's legitimate applications to unprotected acts, even when the acts in question are pure speech. *See Ferber,* 458 U.S. at 770–71, 102 S.Ct. at 3361–62.

The Court finds that the ordinance is not overbroad when analyzed in light of first amendment freedom of association case-law. Consequently, the Court finds that Scientology's overbreadth claim is without merit and denies Scientology's motion for summary judgement on this issue.

### Refund Provisions

Scientology also alleges that the refund provisions found in section 100.05(1)(f) and (g) of Ordinance 3479–84 interfere with intra-member relations. Sections 100.05(1)(f) and (g) read as follows:

Section 100.05 Prohibited Acts.

No charitable organization subject to the provisions of this chapter, or no agent, employee or officer of any such organization, shall engage in any of the following prohibited acts:

(f) promising any person that the proceeds of a solicitation of funds will be refunded upon request, and thereafter willfully failing within 60 days to make a refund that has been requested in writing;

(g) promising any person that refunds of the proceeds of any solicitation of funds will be made upon request without providing such person, at the time such representation is made, with a written statement of the terms and conditions upon which refunds are made; provided, however, that any statement made in good faith at the time is not prohibited by this section.

Scientology contends that the provisions unconstitutionally interfere with their exchange doctrine relating to payment for auditing and training sessions. However, Scientology's concern is moot since payments for auditing and training are no longer tax deductible charitable contributions under Internal Revenue Code § 170. *Hernandez,* 109 S.Ct. 2136. The *Hernandez* court found that payments for auditing are part of

a quintessential *quid pro quo* exchange; in exchange for their money, those being audited receive an identifiable service, namely auditing and training sessions. *Id.* "Scientology establishes fixed price schedules for auditing and training sessions in each branch church; it calibrates particular prices to auditing or training

sessions of particular lengths and levels of sophistication; it returns a refund if auditing and training services go unperformed [less an administrative discount]; it distributes account cards on which persons who have paid money to Scientology can monitor prepaid services they have not yet used; and it categorically bars provision of auditing or training sessions for free." *Id.* at 2145. Scientology promotes auditing through newspaper, magazine, and radio advertisements, free lectures, free personality tests and leaflets. *Id.* at 2141. Scientology encourages prepayment and awards prepayment with a 5% discount. *Id.* A Scientology direction states: "Price cuts are forbidden under any guise ... 1. PROCESSING MAY NEVER BE GIVEN AWAY BY AN ORG. processing is too expensive to deliver ... 9. ONLY FULLY CONTRACTED STAFF IS AWARDED FREE SERVICE, AND THIS IS DONE BY INVOICE AND LEGAL NOTE WHICH BECOMES DUE AND PAYABLE IF THE CONTRACT IS BROKEN." *Id.* at 2145 n. 9 (citing *Graham v. Commissioner,* 83 T.C. at 577–578, n. 5).

Because payments for auditing and training are no longer tax deductible charitable contributions, these payments are no longer covered by the Clearwater ordinance. Therefore, Scientology's arguments about this issue are not applicable.

■ The Court recognizes that Scientology and other organizations may offer refunds unrelated to an organizational doctrine such as the doctrine of exchange. No regulation could require that an organization offer a refund. However, when a voluntary offer of a refund is made at the time of solicitation, a regulation can constitutionally require that a written affirmation also be given. *See Indiana Voluntary Firemen's Association,* 700 F.Supp. at 442, 447 (citing *Riley v. National Federation of The Blind of North Carolina, Inc.,* 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988)) (ordinance requiring written affirmation of disclosure statements made at the time of solicitation upheld, even when the disclosure was a com-

pelled statement regarding the solicitor's professional status). By analogy, Section 100.05(1)(g) of Clearwater Ordinance 3479–84 is constitutional. Section 100.05(1)(g) requires written affirmation only if a promise of a refund is *voluntarily* made.

■ Likewise, Section 100.05(1)(f), making it unlawful to willfully fail to honor a written request for a promised refund within sixty days is constitutional. A municipality has an interest in protecting against refund fraud similar to the interest a city has in insuring that funds raised actually find their way to the organization for which the solicitation was given. *Cantwell,* 310 U.S. at 306, 60 S.Ct. at 904. Regulating to protect against the latter is constitutional. Analogously, regulating to protect against the former should also be constitutional.

Sections 100.05(1)(f) and (g) do not mandate excessive entanglement. They do not require surveillance or inspection. Clearwater would have no involvement with these provisions unless ten bona fide sworn complaints were filed with the City Attorney regarding the organization's policy and an investigation ensued. The ordinance does not require regulatory interaction that inquires into religious doctrine, nor delegation of state power to a religious body, nor detailed monitoring and close administrative contact between secular and religious bodies. *Hernandez,* 109 S.Ct. at 2147 (citations omitted). *See Tony and Susan Alamo Foundation,* 471 U.S. 290, 105 S.Ct. 1953. A situation similar to on-site continuing inspection of day-to-day operations is necessary before entanglement occurs. *Swaggart,* 110 S.Ct. 688.

This Court finds that Scientology's arguments regarding the invalidity of Sections 100.05(1)(f) and (g), the "refund provisions" are not persuasive and denies summary judgement to Scientology on this issue.

### Prohibiting the Use of a Scheme or Artifice To Defraud

Scientology also alleges that the City Attorney's power to investigate and prosecute under Section 100.05(1)(c) of Ordinance 3479–84 is an unconstitutional infringement of the relationship between churches and

their members. Section 100.05(1)(c) prohibits the "use of any scheme or artifice to defraud or obtain property by means of any false statement or representation" Scientology further claims that civil authorities cannot "delve into the details of religious practice for the purpose of judging its veracity or belief."

Clearwater contends that charitable and religious groups are subject to law, and that enforcement officials have the power to investigate infractions by obtaining documents and information pursuant to subpoenas and production orders. Clearwater further alleges that law enforcement officials have both the power and the responsibility of investigating fraud complaints.

While this Court agrees with Scientology's claim that officials cannot determine the veracity or benefits of a religious belief, the Court does not agree with Scientology's claim that officials cannot investigate allegations of fraud or other unlawful conduct because the investigation would unconstitutionally interfere with the relationship between churches and their members. The United States Supreme Court, in *Employment Division* held that religious organizations are not exempt from civil and criminal laws and pointed out that "the nation cannot afford the luxury of deeming presumptively invalid, as applied to the religious objector, every regulation of conduct that does not protect an interest of the highest order." Courts have sustained the power of officials to investigate whether religious organization have violated the law, *See Coates*, 692 F.2d 629; *Dykema*, 666 F.2d 1096; *United States v. Rasheed*, 663 F.2d 843 (9th Cir.1981), *cert. denied* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982). The Court finds Scientology's arguments unconvincing and denies summary judgment to Scientology on this issue.

### Full Disclosure Requirement

Scientology alleges the full disclosure requirement allows Clearwater to dictate a particular form of organizational government because hierarchically organized groups do not permit all members to know such matters as the salaries of officials or the aggregate assets of the organization, and the members would acquire such knowledge under the disclosure requirement. Scientology also contends that by allowing the City Attorney to investigate on the basis of ten bona fide sworn complaints, the ordinance allows dissident members or factions of the church the power of the state to compel church leaders to govern their churches in accordance with civil authority's standards. Scientology asserts that because the City Attorney can subpoena the private records and statements, Scientology is forced to maintain records, even if it chooses to provide a private statement. Ultimately these records could become public under the investigatory powers of the City Attorney.

Clearwater contends that organizations requiring secrecy because of hierarchal organization can use the private statement option; the ordinance does not require that members read the private statement or the supporting records. In addition, Clearwater points out that organizations are protected against disclosure because they can claim hardship rather than disclose the information on their registration statements. If a Certificate is denied, organizations can continue to solicit. Clearwater must initiate a court proceeding within 10 days to determine whether or not the Certificate was validly denied. Clearwater emphasizes that Section 100.03(4) states:

> In such judicial proceedings, a charitable organization may also raise the question to the court that furnishing a specific item or items of information or explanations under this chapter constitutes a special or unique hardship to the charitable organization, and the court shall have jurisdiction in such review process, upon concluding that disclosure constitutes a unique or special hardship, to dispense with the furnishing of that information or explanation, so that a Certificate of Registration can be issued.

The Court, not the City Clerk or other official determines whether the disclosure constitutes a unique or special hardship. Therefore, no City official has discretion as

to the hardship standard. As *Scientology* points out, if the city official determines whether the hardship standard applies, the hardship standard is vague. (Plaintiff's 1988 Support Memorandum, p. 45) (citing *Munson*, 467 U.S. 947, 104 S.Ct. 2839). Clearwater contends that because the judicial review process built into Ordinance 3479–84 mandates that a Court determine whether information is required or not, organizations are protected from unconstitutional disclosure of harmful information. *See Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *Southeastern Promotions Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975).

Further, Clearwater points out that the City Attorney, as a member of the legal profession, is competent to distinguish between bona fide and frivolous complaints and is ethically required to uphold the standards of the legal profession. Clearwater contends that because ten complainants must prove harm before the City Attorney instigates an investigation, dissident members could not impact the organization. However, Clearwater also points out that if ten people have valid complaints, whether they are dissidents or not, they deserve the protection of the legal system.

Clearwater further argues that an ordinance can constitutionally require organizations to maintain records. *See Tony and Susan Alamo*, 471 U.S. 290, 105 S.Ct. 1953 (religious organizations not exempt from secular governmental activity such as fire inspections, building and zoning regulations, or the recordkeeping requirements of the Fair Labor Standards Act). *See also Swaggart*, 110 S.Ct. 688. However, Clearwater points out that records may never become public even if ten bona fide sworn complaints are filed, the complainants prove harm, and the city attorney instigates an investigation. The City Attorney's subpoena power under the ordinance, Section 100.06, can only be enforced through the courts, and would be subject to self-incrimination limitations. Granting Subpoena Power to Community Relations Board, 075–11 Annual Report of the Att'y Gen., 16, 17 (1975).

Clearwater also contends that Scientology has not changed the structure of the organization despite disclosure resulting from various lawsuits and that Scientology remains a flourishing organization with a large income and extensive assets despite disclosure. *See Church of Scientology of California v. Commissioner*, 823 F.2d 1310 (initial 1975 tax case, decided in 1984 involved year long audit, three or four full-time agents; review of approximately two million items including financial records, policy issues, membership fees and descriptions, contracts for services and employment, organizational charts, newsletters and disseminations pieces, and similar records illustrating organizational activities and financial practices, a fifty-one day trial spread out over a year covering Scientology's corporate and management structure, financial activities, banking practices, dissemination practices, techniques, beliefs and relationship to an alleged trust). *Id* at 26, 50.

The Court finds that Scientology's arguments are not convincing. The Clearwater ordinance has built in safeguards to prevent unnecessary disclosure: the private statement, required judicial review, and the required application of legal standards such as basing an investigation only on bona fide complaints and finding probable cause prior to prosecution, Therefore, the Court denies summary judgment to Scientology on this issue.

## WHETHER THE RECORDKEEPING REQUIREMENTS OF THE CLEARWATER ORDINANCE VIOLATE THE ESTABLISHMENT CLAUSE.

States may not make laws that aid one religion, aid all religions, or prefer one religion over another. *Everson*, 330 U.S. 1, 67 S.Ct. 504. In most cases, a law must satisfy each part of a three-part test to withstand an Establishment Clause challenge: (1) the law must have a secular legislative purpose; (2) the principal or primary effect of the law must neither advance nor inhibit religion; and (3) the law must not foster "an excessive government

entanglement with religion." *Lemon,* 403 U.S. 602, 91 S.Ct. 2105.

■ Regulatory entanglement claims arise when parties seek to show that enforcement of a law would create excessive entanglement. *Tony and Susan Alamo Foundation,* 471 U.S. 290, 105 S.Ct. 1953. Day-to-day intrusion and excessive surveillance are necessary before excessive regulatory entanglement occurs. On-site inspections of appellant's evangelistic crusades, lengthy on-site audits, examination of appellant's books and records, and threats of criminal prosecution, administrative and judicial proceedings are not excessive entanglement. *Swaggart,* 110 S.Ct. 688.

Scientology claims that the recordkeeping requirements of Ordinance 3479–84 are broad and intrusive and would result in excessive regulatory entanglement with Scientology's affairs. Scientology further claims that Clearwater has the burden of showing that implementation of the ordinance will not infringe on and entangle it in Scientology's affairs. *Acorn v. City of Frontenac,* 714 F.2d 813, 817 (8th Cir.1973) and *Braintree Baptist Temple v. Holbrook Public Schools,* 616 F.Supp. 81, 90 (D.C. Mass.1984).

Scientology further claims that the under the ordinance, Clearwater would have to "engage in 'comprehensive, discriminating and continuing ... surveillance'" of the organization. It further claims that mere information gathering has the potential for substantially infringing the exercise of first amendment rights and cites *NLRB v. Catholic Bishop,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979) for this proposition.

Scientology also contends that courts in *Sylte v. The Metropolitan Government of Nashville and Davidson County,* 493 F.Supp. 313 (M.D.Tenn.1980) and *Taylor v. City of Knoxville,* 566 F.Supp. 925 (E.D. Tenn.1983) struck down ordinances containing recordkeeping and disclosure provisions virtually identical to those in the Clearwater Ordinance because they resulted in impermissible entanglement with church affairs. According to Scientology, just the requirement of disclosure amounts to entanglement. (Plaintiff's 1988 Support Memorandum, p. 38).

Clearwater contends that the informational requirements of the Clearwater ordinance do not place an undue burden on any charitable or religious organization. As evidence, Clearwater cites examples of organizations that complied with the previous ordinance (Defendants' Support Memorandum, pp. 28–30 and Exhibits), the opinion of John O'Connor, legal counsel for March of Dimes (*Id.* at 30 and exhibits), sample charitable organization disclosure reports, and certified copies of organizations' registration statements filed in other jurisdictions. (*Id.* at 30–35 and Exhibits). Clearwater also cites to National Attorneys General, *State Regulation of Charitable Trusts and Solicitations* (1977), the Internal Revenue Code, and statistics regarding other municipalities that have adopted charitable regulation ordinances to support its contention. (Defendants' Support Memorandum, pp. 36–40 and Exhibits 18 and 25).

Further, according to Clearwater, there is no ongoing surveillance that produces excessive entanglement because the city only becomes involved if there are ten bona fide complaints and an investigation ensues. The City has no day-to-day or on-site involvement with the charitable organization. *See Tony & Susan Alamo Foundation,* 471 U.S. 290, 105 S.Ct. 1953; *Swaggart,* 110 S.Ct. 688.

■ The Court analyzed the cases cited by Scientology to support its contention that the Clearwater ordinance would create entanglement if enforced. The Court does not find the cases persuasive. First, while Scientology claims that *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979) held that mere information-gathering sought by government officials is impermissible in the religious context, this Court reads the case to stand for the proposition that the National Labor Relations Act did not confer jurisdiction for the NLRB to certify unions as bargaining agents for lay teachers in church-operated schools. The *NLRB* Court pointed out the chilling effect that the re-

quirement of bargaining would impose on the exercise of the bishops' control over the religious mission of the schools.

The Court also considered *Sylte v. Metropolitan Government of Nashville and Davidson County*, 493 F.Supp. 313 and distinguishes the case on the facts. The *Sylte* Court struck down the Nashville ordinance because a Nashville solicitation Board could investigate the affairs of any person soliciting. The Board had the power to "have access to and inspect books, records, papers, and facilities of applicants or of anyone making solicitation in the area of Metropolitan Government." The Board could also delegate their power to any person approved by the Board. In its investigation, the Board could hold hearings and at the hearing inquire into the need to further the religious beliefs, and ask for information "as the Board might reasonably require to determine whether the solicitation is in the interest and not inimical to the public welfare." The ordinance set out no standards by which the Board was to make determinations. The Board could investigate "where questions arose," and no provision was made for a judicial hearing. The Board had "unfettered power to obstruct the collection of funds for religious purposes." *Id.* at 319. *Sylte* is not relative to the present case because the Clearwater ordinance provides for a judicial hearing prior to denial of a Certificate of Registration; there is no board with unlimited discretion to investigate anyone soliciting "when questions arise"; and the City Attorney's investigatory power cannot be delegated. Therefore *Sylte* does not support Scientology's contention that excessive entanglement would follow the enforcement of the Clearwater ordinance.

The facts in *Taylor v. City of Knoxville*, 566 F.Supp. 925 also distinguish that case from the present controversy. The *Taylor* Court addressed issues similar to those addressed in *Sylte*. In *Taylor*, a Board had authority:

> to investigate the affairs of any person soliciting for religious purposes under a certificate ... and to make public their findings in order that the public may be fully informed as to the affairs of any

said person. Said person shall make available to the Board ... or any person designated by the Board ... all books, records, or other information ...

Unlike the Clearwater ordinance, the *Taylor* ordinance set up no pre-investigation prerequisites such as ten bona fide complaints, and the ordinance provided no procedural safeguards such as requiring judicial process for enforcement of subpoenas. *Taylor* does not support Scientology's contention that excessive entanglement would follow the enforcement of the Clearwater ordinance.

This Court studied Scientology's interpretation of deposition testimony offered in support of its contention that the Clearwater ordinance creates excessive entanglement. (Plaintiff's 1988 Support Memorandum, p. 38). The Court does not find Scientology's interpretation persuasive. For example, Scientology claims that, "according to the City Clerk [Mrs. Williams], she might refuse to grant a solicitation certificate altogether unless, in her view, the intended use of the funds furthers a legitimate charitable purpose of the church." (William's Deposition 74–76). The Court disagrees with Scientology's interpretation of Mrs. Williams' statements and their effect on the certification granting process.

Scientology appears to assert that because the Clearwater ordinance requires disclosure, entanglement will occur. The Court does not find this argument persuasive. Entanglement requires specific actions such as on-going surveillance and day-to-day on site inspection. Therefore, the Court denies summary judgment to Scientology on this issue.

## C. WHETHER THE CLEARWATER ORDINANCE IS VAGUE AND CONFERS EXCESSIVE DISCRETION ON OFFICIALS FOR ENFORCEMENT

■ Vagueness is concerned with the clarity of a law. A law must be drawn with sufficient clarity so that people know the conduct they must take to avoid the sanction of the particular law. "[A]ny law is unconstitutionally vague if 'people of

common intelligence must necessarily guess at its meaning and differ as to its application.'" *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Under procedural due process, a statute is not constitutionally fair if it fails to give enough information so that people can avoid unlawful conduct. "The applicable standard, however, is not one of wholly consistent academic definitions of abstract terms. It is, rather, the practical criterion of fair notice to those to whom the statute is directed. The particular context is all important." *American Communications Association v. Douds*, 339 U.S. 382, 412, 70 S.Ct. 674, 691, 94 L.Ed. 925 (1950).

In addition, a law must provide explicit standards for those who apply it to prevent arbitrary and discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222 (1972). "A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* However, "[T]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Liberman v. Schesventer*, 447 F.Supp. 1355 (M.D.Fla.1978) (citing *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961)). Judicial review before action is taken meets the requirements of procedural due process. *Freedman*, 380 U.S. 51, 85 S.Ct. 734; *Southeastern Promotions Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975).

 Scientology alleges that Ordinance 3479–84 is unconstitutionally vague and that it vests excessively broad and undefined discretion in its enforcing officials. Scientology provides no facts or argument to support its assertion that the ordinance fails to provide persons a reasonable opportunity to know what is prohibited.

To support its argument of broad and undefined discretion, Scientology once again uses the Houston ordinance as a yardstick for measuring the constitutionality of the Clearwater ordinance. Scientology claims that the Houston ordinance does not confer excessive discretion on city officials, but claims that Sections 100.03(2) and (3) and 100.05(1)(b) of the Clearwater ordinance do. Scientology claims that the Clearwater "issuing official has broad authority to engage in selective and discriminatory enforcement and to interfere with protected activities in several significant respects." Scientology claims that the Clearwater provisions give the Clearwater City Clerk and City Attorney authority to "determine the sufficiency of registration statements, and in the case of the City Attorney, the truth or falsity of information contained there." The Clearwater provisions read as follows:

Section 100.03. Registration with City Clerk.

(2) After a review of the registration statement to determine its compliance with this section, and within ten (10) working days of the receipt of the registration statement, the City Clerk shall either issue a Certificate of Registration, as provided in this section, or notify the person registering that the registration statement does not comply with the requirements of this section and specifically point out what information or explanation has not been furnished that is required before a Certificate of Registration will be issued.

(3) If for any reason the City Clerk refuses to issue a Certificate of Registration to any charitable organization that has filed a registration statement and the charitable organization disagrees with this decision, the City of Clearwater shall bear the burden of initiating, within ten working days of the denial, a judicial proceeding in the form of a declaratory judgment action pursuant to Chapter 86, Florida Statutes, to review the City Clerk's refusal to grant a registration certificate. In such proceeding, the charitable organization seeking the Certificate of Registration shall be considered a party in interest. Unless or until the circuit court rules that the City Clerk has properly refused to issue a Certificate of

Registration, the charitable organization may solicit funds without compliance with the registration provisions of this chapter.

100.05. Prohibited Acts.

No charitable organization subject to the provisions of this chapter, or no agent, employee, or officer of any such organization, shall engage in any of the following prohibited acts:

1. (b) wilful failure to file any statement required by this chapter or knowingly making false statements or providing false information in these statements.

The comparable provision in the Houston Ordinance, which Scientology claims does not confer excessive discretion is Section 37–45.

### Houston City Ordinance

Section 37–45. Issuance of Certificate of Registration.

After a review of the registration statement to determine its compliance with Section 37–43 above, and within ten (10) working days of the receipt of the registration statement, the City Tax Assessor and Collector shall either issue a Certificate of Registration, as provided in Section 37–47, or notify the person registering that the registration statement does not comply with the requirements of Section 37–43 above and specifically point out what information or explanation has not been furnished that is required before a Certificate of Registration can be issued.

The Court compared the provisions and found no significant differences between the discretion the city officials have to approve a Certificate of Registration under either ordinance. The Clearwater ordinance appears to offer more protection to an individual applying for a Certificate of Registration because under Section 100.-03(3) only a court can deny a Certificate of Registration.

In addition, Scientology alleges that the Houston ordinance was upheld partly because of the removal, by amendment, of the investigatory and *prosecutorial* powers of the city officials. Scientology states:

"It was the removal, by amendment, of the investigatory and prosecutorial powers of the Houston Ordinance ..." that was critical to the Court's holding the ordinance constitutional. (Plaintiff's 1988 Supporting Memorandum, p. 40). Scientology claims that the removal of the following language removed investigatory and prosecutorial power: [The city tax assessor and collector shall] "examine the application and to make such investigation as he may deem necessary to ascertain the truth and the facts and information set out therein." *Houston,* 689 F.2d at 543.

This Court does not find any prosecutorial powers inherent in this statement, or that the Houston ordinance contained any prosecutorial powers at any time. Prosecutorial or enforcement powers were not part of the Houston ordinance because Houston has a separate enforcement provision for city ordinances. (Statement of City Attorney's Office, Houston).

However, some solicitation ordinances do contain enforcement provisions. For example, the Court in *Indiana Voluntary Firemen's Association,* 700 F.Supp. at 425 upheld the following enforcement provisions in a solicitation regulation ordinance:

First, the attorney general may bring an action to enjoin a violation of the statute—and to receive such injunctive relief, the state 'is not required to establish irreparable harm but only a violation of a statue or that the requested order promotes the public interest.' Ind.Code § 23–7–8(c). Second, for each violation of the Statute, the state may be awarded civil penalties of up to five hundred dollars ($500). *Id.* Third, and most significantly, any person who 'knowingly or intentionally' fails to make the disclosures prescribed in section 23–7–8–6 thereby commits a Class A infraction, subjecting that person to a possible adverse judgment of up to ten thousand dollars ($10,000) plus costs. Ind.Code § 23–7–8–8(d).

Scientology also contends that Section 100.06 of the Clearwater ordinance gives the City Attorney extraordinarily broad

powers to investigate and prosecute violations of the ordinance, including use of subpoenas to compel the production of persons or documents, and the institution of legal proceedings. Section 100.06 reads:

Section 100.06. Power of the City Attorney to Investigate and Prosecute Prohibited Acts of Charitable Organizations.

1. The City Attorney shall investigate alleged violations of this chapter only after ten individuals file separate bona fide complaints in writing, sworn to or affirmed, with the City Attorney, setting forth facts demonstrating that one or more of the prohibited acts set forth in Section 100.05 have been engaged in by the charitable organization and that the complaining party has been injured by each act or acts.

2. The City Attorney, when conducting an investigation pursuant to subparagraph 1 shall have the power to subpoena any person, require the production of the records or documents described in Section 100.04 and the private statement and records or documents described in Section 100.01(3), and administer oaths.

3. If the investigation conducted under subparagraph 1 demonstrates that probable cause exists to believe that a violation or violations under Section 100.05 exist, then the City Attorney shall institute an action to prosecute such violation or violations.

Clearwater argues that Scientology's objection to the investigatory power of the City Attorney is frivolous because the City's law enforcement officer always determines whether to investigate suspected violations of law and how extensive an investigation should be. Clearwater claims that the ordinance actually diminishes the City Attorney's power to investigate since the City Attorney cannot investigate alleged violations of the ordinance unless ten individuals file separate bona fide complaints setting forth facts showing that unlawful acts have been committed. The ten complaints must be sworn to or affirmed. A prosecution can be brought only after an investigation subsequent to the complaints demonstrates probable cause to believe there were violations. Subpoenas issued by the City Attorney during an investigation are not self-executing. The City Attorney must go to court to enforce them. Therefore, an organization can refuse to obey the subpoena unless ordered to comply by a neutral and detached court, and in court the organization can put forth any and all of its statutory and constitutional arguments to attempt to dissuade the tribunal from enforcing the subpoena.

Clearwater points out that in defining action that constitutes a violation of the ordinance, the ordinance explicitly states, in almost all instances that the violative act must be willful or knowing. In the other instances violations are acts that are inherently willful or knowing (such as using a scheme or artifice to defraud by means of false representations). Section 100.05(1)(c).

Clearwater points out that the Supreme Court has held that government " 'has broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 1530–31, 84 L.Ed.2d 547 (1985). *See also Newman v. United States*, 382 F.2d 479, 480 (D.C.Cir.1967). " '[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute ... generally rests entirely in his discretion.' " *Wayte*, 105 S.Ct. at 1531 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)).

Clearwater further alleges that charitable and religious organizations cannot validly claim that their first amendment rights of speech or religions are a bar to laws requiring them to keep information and to disclose it to the public and to government investigators acting pursuant to subpoena. Clearwater contends that if the first amendment did bar such information and disclosure requirements, charities and religions would be above the law and would be able to commit violations with impunity from detection, punishment and deterrence. Government, as the Supreme Court has said, would, "exist only in name." *Reynolds*, 98 U.S. 145.

The Court finds Clearwater's arguments persuasive. Therefore, the Court denies summary judgment to Scientology on this issue.

### D. WHETHER THE CLEARWATER ORDINANCE VIOLATES FIRST AMENDMENT GUARANTEES BECAUSE THE DEFINITION OF SOLICITING FUNDS INCLUDES THE SALE OF PRODUCTS UPON THE REPRESENTATION, EXPRESS OR IMPLIED, THAT THE PROCEEDS WILL BE USED FOR A CHARITABLE PURPOSE.

 Clearwater Ordinance 3479–84 Section 100.01(2) reads:

(2) The term "solicit funds" or "solicitation of funds" shall mean any request, within the City of Clearwater for the donation of money, property, or anything of value, or the pledge of a future donation of money, property, or anything of value; or the selling or offering for sale of any property, real or person, tangible or intangible, whether of value or not, including, but not limited to, goods, books, pamphlets, tickets, publications or subscriptions to publications, or brochures, upon the representation, express or implied, that the proceeds of such sale will be used for a charitable purpose as such term is herein defined. Expressly excluded from the meaning of "solicit funds" or "solicitation of funds" is any offer of membership in any charitable organization. A solicitation of funds is complete when the solicitation is communicated to any individual then located within the corporate limits of the city.

Scientology alleges that under this provision, "a charitable organization, such as a church, a social club, or a university book store may not sell a pamphlet, a book, a ticket to a theatrical production, or a magazine without obtaining a license in the form of a Certificate of Registration." (Plaintiff's 1988 Support Memorandum, p. 47). Scientology also alleges that M.A. Galbraith, Clearwater City Attorney, in a deposition, indicated that "the requirement that a charitable organization register and obtain a certificate before selling a book or

magazine applies whether or not the organization makes representations as to the use of the proceeds of the sale." (*Id.*)

Clearwater points out that the plain language of the provision refutes Scientology's statements. Further, Clearwater contends that Scientology misrepresents the Galbraith deposition testimony (Galbraith dep., pp. 88–92) as to the sale of literature.

Clearwater also contends that the provision does not censor content of the literature and is not a prior restraint. Clearwater also reiterates the protection built in to the ordinance itself: the ordinance provides an exemption from the financial reporting requirement if the charitable organization collected $10,000 or less from no more than twenty people during the preceding twelve months; the ordinance provides judicial review of any denial of a Certificate of Registrations; and the ordinance provides that organizations can continue soliciting until a court denies a Certificate of Registration.

The Court examined the Galbraith deposition and finds that the deposition testimony does not support Scientology's claim. (Galbraith dep., pp. 88–92). The Court also compared the definition of "soliciting funds" in the Clearwater ordinance with a similar provision in the Houston ordinance. Houston ordinance Section 37–41 reads:

(a) The term "solicit funds" or "solicitation of funds" shall mean any request for the donation of money, property, or any thing of value, or the pledge of a future donation of money, property, or anything of value; or the selling or offering for sale of any property, real or person, tangible or intangible whether of value or not, including, but not limited to, goods, books, pamphlets, tickets, publications, or brochures, upon the representation, express or implied, that the proceeds of such sale will be used for a charitable purpose as such term is herein defined. Expressly excluded from the meaning of "solicit funds" or "solicitation of funds" is any offer of membership in any organization. A solicitation of funds is complete when the solicitation

is communicated to any individual located within the corporate limits of the city.

The Fifth Circuit Court of Appeals found that the Houston ordinance, including this provision was constitutional. This Court does not find that the Clearwater provision differs significantly from the Houston provision. Throughout all its Memoranda, Scientology has relied on the Houston ordinance. The Court relies on the Houston ordinance in this instance. The Court finds Scientology's arguments unconvincing and denies summary judgment to Scientology on this issue. Accordingly, it is

ORDERED that Plaintiff CHURCH OF SCIENTOLOGY FLAG SERVICE ORG. INC.'s motion for partial summary judgment against Defendants, CITY OF CLEARWATER, et al. on the issue of standing is granted; it is further

ORDERED that Plaintiff CHURCH OF SCIENTOLOGY FLAG SERVICE ORG. INC.'s motion for partial summary judgment against Defendants, CITY OF CLEARWATER, et al. on all issues other than standing is denied. It is further

ORDERED that Defendants, CITY OF CLEARWATER, et al.'s motion for partial summary judgment against Plaintiff CHURCH OF SCIENTOLOGY FLAG SERVICE ORG. INC. on the issue of standing is denied;

ORDERED that Defendants, CITY OF CLEARWATER, et al.'s motion for partial summary judgment against Plaintiff CHURCH OF SCIENTOLOGY FLAG SERVICE ORG. INC. on all issues other than standing is granted;

ORDERED that all other pending motions before the Court in this case, as listed above, are denied as moot.

DONE AND ORDERED.

## PROLOGUE

In 1984, when this Court ruled that Ordinance 3479–84 was facially constitutional, the Court was accepting a burden that would save the parties time and effort by allowing the parties to appeal the Court's ruling immediately. The Court recognized that it was dealing with the concerns of a municipality as expressed through its legislative body, and that the concerns required swift, expeditious attention. This Court's role is merely to interpret the laws made by the elected representatives of the people, who, in making the laws, provide contemporary expression of the public's will and public policy. An immediate appeal in this case provided the vehicle for an expeditious clarification and resolution of the issues raised by an expression of the people's will as manifested in a city ordinance.

The Court also deferred to the fundamental precept that a statute, when possible, should be upheld as constitutional. The Texas cases of *International Society of Krishna Consciousness of Houston, Inc. v. City of Houston, Texas,* 689 F.2d 541 (5th Cir.1982) and *Poe v. City of Humble, Texas,* 554 F.Supp. 233 (1983) also influenced the Court's ruling that the Clearwater ordinance was constitutional. The Houston ordinance was initially passed in 1969. The ordinance expressed the will of the people regarding financial disclosure in charitable solicitation situations. It was tested by the Plaintiff in 1979 and the Fifth Circuit upheld the ordinance and the will of the people. The ordinance was again upheld when Poe, a member of a religious society, brought an action challenging the constitutionality of a religious solicitation ordinance in Humble, Texas. The Federal District Judge upheld the constitutionality of the ordinance citing *Houston.* Likewise, this Court upheld the will of the people in upholding the constitutionality of the Clearwater ordinance.

Since 1984, several important decisions have supported the Clearwater citizens' viewpoint. *See Employment Division, Department of Human Resources of Oregon v. Smith,* —— U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Riley v. National Federation of The Blind of North Carolina, Inc.,* 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988); *Hernandez v. Commissioner of Internal Revenue,* 490 U.S. 680, 109 S.Ct. 2136, 2141, 104 L.Ed.2d 766 (1989); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 723 F.Supp. 1467 (S.D.Fla.1989).

Chief Justice Rehnquist and Justice O'Connor also support, in their dissent from the Court's majority opinion in *Riley*, 487 U.S. 781, 108 S.Ct. 2667, the Clearwater viewpoint that not all solicitation is protected first amendment conduct. The Chief Justice said, about charitable contribution first amendment protection:

The Court's opinion in *Village of Schaumburg* relied on the seminal cases of *Lovell v. Griffin*, 303 U.S. 444 [58 S.Ct. 666, 82 L.Ed. 949] (1938), *Schneider v. State*, 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 155] (1939), and *Martin v. Struthers*, 319 U.S. 141 [63 S.Ct. 862, 87 L.Ed. 1313] (1943), as establishing the right of charitable solicitors under the First Amendment to be free from burdensome governmental regulation. It is interesting to compare the activities of the three "solicitors" in those cases with the activities of professional fundraisers in cases like the present one. In *Lovell*, for example, appellant was convicted for distributing a religious pamphlet and a magazine called the "Golden Age" without a permit. 303 U.S. at 450 [58 S.Ct. at 668]. In *Schneider*, the evidence showed that one of the petitioners was a "Jehovah's Witness" who canvassed house-to-house seeking to leave behind some literature and to obtain contributions to defray the cost of printing additional literature for others. 308 U.S. at 158 [60 S.Ct. at 149]. In *Martin*, the appellant was also a Jehovah's Witness, who went door-to-door distributing to residents of homes leaflets advertising a religious meeting. 319 U.S. at 142 [63 S.Ct. at 863].

These activities are a far cry indeed from the activities of professional solicitors such as those involved in *Munson* and the present case. In *Munson*, the plaintiff, an Indiana corporation, was "a professional for-profit fundraiser in the business of promoting fundraising events and giving advise to customers on how those events should be conducted. Its Maryland customers include[d] various chapters of the Fraternal Order of Police." 467 U.S. at 950 [104 S.Ct. at 2843]. The professional fundraisers in the present case presumably operate in the same manner. Yet the Court obdurately refuses to allow the various States which have legislated in this area to distinguish between the sort of incidental fundraising involved in *Lovell, Schneider,* and *Martin* on the one hand, and the entirely commercial activities of people whose job is, simply put, figuring out how to raise money for charities.

The Court has recognized that the commercial aspects of newsgathering and publishing are different from the editorial function, and has upheld regulation of the former against claims based on the First Amendment....